*1232
 
 OPINION
 

 Per Curiam:
 

 Taos Estates, L.P. (“Taos”) is a joint venture composed of J.M. Peters Co., Inc. (“Peters”), The Accord Group (“Accord”), and Durable Homes (“Durable”). These three organizations are in turn owned by Capital Pacific Holdings, Inc. (“Capital”), a holding company. Taos was formed to build a residential subdivision in Las Vegas, Nevada.
 

 In addition to being one of the joint venture partners, Durable was also the general contractor on the project. Durable subcontracted with respondent RCR Plumbing, Inc. (“RCR”) for the installation of plumbing and gas piping in the homes under construction. The contract between Durable and RCR contained the following provision:
 

 To the full extent permitted by law, [RCR] agrees to hold harmless and indemnify [Durable] . . . against any and all claims, damages, losses, liabilities and expenses . . . arising from or in connection with [RCR’s] performance or nonperformance under this subcontract. [RCR] further agrees to obtain prior, [sic] to commencing work, and maintain, at its
 
 *1233
 
 sole cost, during the progress of its performance hereunder such insurance policies as may be required by [Durable] including, without limitation . . . property damage insurance . . . naming [Durable] as Additional Insured.
 

 Pursuant to this provision, RCR obtained an insurance policy from Federated Mutual Insurance Company which named Durable as an additional insured.
 

 Appellant Lumbermen’s Underwriting Alliance (“LUA”) issued a policy to Peters which insured against property damage to the Taos subdivision occurring during the course of construction (“the policy”). An endorsement to the policy changed the named insured to Capital, the only named insured on the policy. The policy covered, in relevant part:
 

 Dwellings, apartment houses, garden apartments, condominiums and other structures appurtenant thereto, while in course of construction and after completion — but not sold or occupied with Insured’s knowledge, together with all building materials and supplies at the construction site intended to enter into construction of same,
 
 owned by the insured or for which the insured is legally liable.
 

 (Emphasis added.)
 

 On September 11, 1995, an employee of RCR is alleged to have negligently started a fire that caused over $1.2 million of damage to the Taos subdivision. Pursuant to the policy, LUA paid $1,079,248.00 to Taos.
 
 [1]
 
 On September 22, 1995, Durable paid RCR $34,041.81 as payment on an invoice for “materials and supplies delivered to and installed on, and labor performed on the Taos Estates project.” On December 1, 1995, Durable paid RCR $26,816.00 as payment on an invoice for the “Taos fire rebuild.”
 

 On November 26, 1996, LUA, as subrogee of Taos, filed a complaint against RCR for damages resulting from the fire. On January 8, 1997, RCR filed a motion to dismiss LUA’s action for failure to state a claim pursuant to NRCP 12(b)(5). On February 24, 1997, the district court granted RCR’s motion on the grounds that RCR was a coinsured under the policy. On March 13, 1997, LUA filed a motion for reconsideration or, in the alternative, a motion for NRCP 54(b) certification. On May 20, 1997, the district court denied LUA’s motion for reconsideration and ordered final judgment entered against LUA pursuant to Rule 54(b). On June 13, 1997, LUA filed a timely notice of appeal.
 

 
 *1234
 

 DISCUSSION
 

 As a threshold matter, RCR argues that this court should review the order of the district court as an order granting summary judgment under NRCP 56 rather than as a motion to dismiss under NRCP 12(b)(5). We agree.
 

 ‘ ‘If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, [a motion to dismiss under NRCP 12(b)(5)] shall be treated as one for summary judgment and disposed of as provided in Rule 56.” NRCP 12(c).
 

 Here, RCR’s motion for dismissal was supported by a number of documents which were outside the pleadings, including copies •of the contracts and insurance policies which are at issue in this case. LUA’s opposition to this motion included an affidavit executed by an employee of LUA. Therefore, we conclude that the district court’s dismissal of the case must be reviewed as an order granting summary judgment in RCR’s favor.
 
 See
 
 Thompson v. City of North Las Vegas, 108 Nev. 435, 438-39, 833 P.2d 1132, 1134 (1992).
 

 Standard of Review
 

 It is well settled that summary judgment should be granted only when, based upon the pleadings and discovery on file, no genuine issue of material fact exists for trial. NRCP 56(c). A genuine issue of material fact exists when a reasonable jury could return a verdict for the non-moving party. Posadas v. City of Reno, 109 Nev. 448, 452, 851 P.2d 438, 441-42 (1993). While we will construe the pleadings and proof in the light most favorable to the non-moving party, that party is not entitled to build its case on ‘ ‘gossamer threads of whimsy, speculation, and conjecture.”
 
 Id.
 
 We review orders granting summary judgment de novo. Bulbman, Inc. v. Nevada Bell, 108 Nev. 105, 110, 825 P.2d 588, 591 (1992).
 

 LUA’s Rights of Subrogation
 

 On appeal, LUA argues that the district court erred in determining that LUA was precluded from bringing an action in sub-rogation against RCR. LUA argues that genuine issues of material fact remain as to whether RCR was a coinsured of Taos under the policy and Nevada law.
 

 It is well established that “an insurer may not subrogate against a coinsured of its insured.” J. F. Shea Co. v. Hynds Plumbing,
 
 *1235
 
 96 Nev. 862, 866, 619 P.2d 1207, 1209 (1980). In addition, “[a]n insurance policy is a contract; as such, the policy is enforced according to its terms so as to effectuate the parties’ intent.” Burrows v. Progressive Casualty Ins., 107 Nev. 779, 781, 820 P.2d 748, 749 (1991). While ambiguous terms in an insurance policy are generally construed in favor of the insured, this principle does not apply to the determination of who is insured. Aetna Casualty & Surety v. Aztec Plumbing, 106 Nev. 474, 477, 796 P.2d 227, 229 (1990).
 

 In
 
 Shea,
 
 the insurer for a developer brought an action in sub-rogation against a subcontractor for damages resulting from a fire negligently caused by an employee of the subcontractor. The subcontract contained a clause obligating the subcontractor to indemnify the developer for any loss resulting from the subcontractor’s performance. However, the subcontract also required the developer to obtain fire insurance covering the property subject to the subcontract.
 
 Shea,
 
 96 Nev. at 863-44, 619 P.2d at 1208.
 

 The district court in
 
 Shea
 
 dismissed the action on the ground that the subcontractor was a coinsured of the general contractor. We affirmed the judgment of the district court, reasoning that although the subcontractor was not expressly named as an insured on the developer’s policy, the loss at issue was covered, and therefore, the subcontractor was a coinsured. In so determining, this court relied on language in the policy providing that losses to “materials, equipment and supplies and temporary structures of all kinds incidental to the construction of buildings and structures, and
 
 similar properties belonging to others for which the insured is
 
 liable” were covered.
 
 Id.
 
 at 865, 619 P.2d at 1209 (emphasis added). We concluded that the term “liable” was not to be construed as being restricted to the legal liability of the developer, but extended coverage to the owner of any property for which the developer was generally responsible:
 

 The insurance provided for in the Industrial policy attached to the construction project for the benefit of all the unnamed owners of property therein. In this context, the term “liable” is not to be construed as being restricted to the legal liability of Shea, but extends coverage to the owner of any property within the project for which Shea was generally responsible. Shea, as general contractor, had responsibility for the premises where the work was in progress and for equipment and supplies on the premises. Consequently, Hynds’ and Ruppert’s material and supplies located on the damaged premises, which were not specifically excluded, were covered under the Industrial policy. It follows that Hynds and Ruppert were to that extent coinsured
 
 parties
 
 
 *1236
 
 under the policy. An insurer may not subrogate against a coinsured of its insured.
 

 Id.
 
 at 865-66, 619 P.2d at 1209 (citations omitted) (emphasis added). In apparent response to
 
 Shea,
 
 property insurers writing builders’ risk policies, in the modern context, now attempt to extend coverage only to property “owned by the insured or for which the insured is
 
 legally
 
 liable.” The problem is that, while
 
 Shea
 
 defined the term “liability,” it did not articulate how “liability” differed from “legal liability.” Thus, although builders’ risk insurers such as LUA have attempted to rely on a distinction between the two terms,
 
 Shea
 
 provides no guidance.
 

 We conclude that the distinction between legal liability and general responsibility should be abandoned. Although that distinction led us to conclude that coverage of a property loss at a construction project rendered the owner of the property who caused the loss an additional insured, the true essence of
 
 Shea
 
 was that the developer was required, in part, to insure the obligation of the subcontractor, thus rendering the construction agreement and the insurance policy ambiguous. The ruling in
 
 Shea
 
 simply resolved the ambiguity by construing the insurance agreement as a matter of law.
 

 The subcontract between RCR and Durable is not ambiguous. It required RCR to hold harmless and indemnify Durable for all losses, etc., arising from performance of the agreement and required RCR to obtain liability and property damage insurance for losses naming Durable as an additional insured. Thus, RCR’s insurance with Federated Mutual covers losses which were covered by the arguably duplicate coverage obtained by the developer in
 
 Shea.
 
 Because we now conclude that the language “legal liability” has no significance, and because this eliminates an inference that RCR is an insured under LUA’s policy as was the case in
 
 Shea,
 
 LUA is, as a matter of law, entitled to bring a subrogation action. Thus, to the extent
 
 Shea
 
 is inconsistent with this opinion, it is expressly overruled.
 
 [2]
 

 
 *1237
 
 For the foregoing reasons, we conclude that the trial court erred by granting RCR’s motion for dismissal. Accordingly, we reverse the order of the district court and remand the case for further proceedings in accordance with this opinion.
 
 [3]
 

 [1]
 

 The parties refer to Taos and Capital as though they were interchangeable; although Capital was the only named insured on the policy, the pleadings here assert that payment was made to Taos. Therefore, we refer to Taos as the named insured in this opinion.
 

 [2]
 

 Also, although
 
 Shea
 
 is factually quite similar to the present case, there is one key distinction. The subcontract in
 
 Shea
 
 provided specifically that the developer was to provide fire insurance, which covered property subject to the subcontract. Here, the contract between RCR and Durable contained no such provision. Accordingly, we conclude that our decision in
 
 Shea
 
 would not be determinative in any case.
 

 RCR also cites to Transamerica Insurance Co. v. Gage Plumbing and Heating Co., 433 F.2d 1051 (10th Cir. 1970), in support of its position. This case also involved a factual scenario similar to the one at issue here. In
 
 Transamerica,
 
 the insurance policy at issue contained a provision limiting coverage to that property “owned by the Insured or . . . for which the insured is legally liable.”
 
 Id.
 
 at 1053. However, we conclude that this case is distinguishable because the facts in
 
 Transamerica
 
 indicated that both the named
 
 *1237
 
 insured, who was the owner of the premises, and the subcontractor understood that the policy would cover the loss at issue.
 
 Id.
 
 The subcontractor had canceled its own insurance policy in reliance on the owner’s policy. Indeed, the insurer had initially agreed to pay the subcontractor for his loss.
 
 Id.
 
 at 1054.
 

 In the present case, RCR continued to maintain its own policy that covered the loss in question. Furthermore, there is no evidence showing that LUA has made or agreed to make any payments to RCR under the policy. Therefore, we conclude that
 
 Transamerica
 
 was decided on facts which are not present in this case.
 

 [3]
 

 We leave the question of whether LUA or Federated Mutual should prorate or apportion coverages for further determination by the trial court.
 
 Cf. Shea,
 
 96 Nev. at 866, 619 P.2d at 1209.