STATE OF NEVADA, OFFICE OF THE ATTORNEY GENERAL; FRANKIE SUE DEL PAPA, DONALD HAIGHT, DAVID THOMPSON, AND J.T. HEALY, PETITIONERS, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE JAMES C. MAHAN, DISTRICT JUDGE, RESPONDENTS, AND MICHAEL J. ANZALONE, REAL PARTY IN INTEREST.

No. 38185

March 13, 2002

42 P.3d 233

---

[Rehearing denied May 8, 2002]

SHEARING, J., dissented.

*Frankie Sue Del Papa,* Attorney General, *Patrick O. King,* Senior Deputy Attorney General, and *David W. Wasick,* Assistant Attorney General, Carson City, for Petitioners.

*Wait Law Firm,* Reno, for Petitioner Del Papa, individually.

*Christopher G. Gellner,* Las Vegas; *Fitzgerald & Arsenault,* Las Vegas; *Mirch & Mirch,* Reno; *Christine Manno,* Phoenix, Arizona, for Real Party in Interest.

## OPINION

*Per Curiam:*

This writ petition arises from a wrongful termination case against the Attorney General's office by a former investigator, Mike Anzalone. Anzalone's complaint alleges various causes of action arising from his termination, including, among others, defamation, civil rights violations, and tortious discharge. On October 13, 2000, petitioners filed a motion to dismiss the complaint. The district court denied the motion.[1] Petitioners now seek extraordinary relief from this court to compel dismissal of the underlying case.

Extraordinary relief lies within our sole discretion, and is granted only in limited circumstances. As a matter of judicial economy and because this case raises important legal questions, we exercise our discretion to grant extraordinary relief here. We conclude that Anzalone's claims against petitioners either lack merit or cannot be sustained against petitioners. We therefore grant the petition.

### FACTS

Mike Anzalone was employed at the Attorney General's office from August 1993 until he resigned in 1996. Before his resignation, Anzalone was involved with the criminal investigation of Ron Harris, a Gaming Control Board (GCB) employee, who had been arrested for cheating activity. The GCB had previously experienced problems with the legal representation the Attorney General's office was providing. As a result, the GCB, at the time the Attorney General's office initiated the Harris investigation, was lobbying for legislation that would have allowed it to hire its own legal counsel.

Anzalone alleges that from that time on, bad feelings persisted between the Attorney General's office and the GCB. Anzalone further alleges that as a result, the Attorney General's office

---

[1]Several affidavits and other matters outside of the pleadings were presented to the district court on the motion to dismiss. In such a case, "the motion shall be treated as one for summary judgment." NRCP 12(c); *see also Lumbermen's Underwriting v. RCR Plumbing,* 114 Nev. 1231, 1234, 969 P.2d 301, 303 (1998).

unlawfully expanded the criminal investigation of Harris to include an ''intelligence-type investigation'' of the GCB and its chairman, Bill Bible. Anzalone alleges that as part of this investigation, Deputy Attorney General David Thompson, who was ultimately put in charge of the Harris investigation at the direction of Attorney General Frankie Sue Del Papa, requested that Anzalone obtain telephone and bank records of Bible and other GCB members by illegal means. Anzalone alleges that he was forced to resign because he refused to do so.

Thereafter, on February 18, 1998, Anzalone filed the underlying complaint against the State of Nevada; Frankie Sue Del Papa, Attorney General; Office of the Attorney General for the State of Nevada; Donald Haight, Deputy Attorney General; J.T. Healy, an investigator of the Attorney General's office; Ronald Wheatly,[2] an investigator of the Attorney General's office; and David Thompson, Deputy Attorney General. Anzalone sued the individuals in their individual and official capacities. In his complaint, Anzalone raised various claims related to his termination. On October 13, 2000, petitioners filed a motion to dismiss the complaint. On February 26, 2001, the district court held a hearing and denied the motion to dismiss.[3] On July 17, 2001, as the trial date approached, petitioners filed this writ petition requesting this court to compel dismissal of Anzalone's claims.

## DISCUSSION

### Writ relief

We must first consider whether a petition for writ relief seeking to compel dismissal of the case after an unsuccessful motion to dismiss is proper. Writ relief is an extraordinary remedy that will only issue at the discretion of this court.[4] A writ of mandamus is available ''to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station,'' or to control manifest abuse of discretion.[5] A writ of prohibition is the counterpart of the writ of mandamus and is available to ''arrest[ ] the proceedings of any tribunal . . . when such proceedings are without or in excess of the jurisdiction of

---

[2]Wheatly filed a motion for summary judgment on May 31, 2001, and the district court granted his motion.

[3]Del Papa renewed a motion for summary judgment on June 4, 2001, requesting that all the claims in her individual capacity be dismissed. On June 26, 2001, the district court granted the motion.

[4]*Ashokan v. State, Dep't of Ins.*, 109 Nev. 662, 665, 856 P.2d 244, 246 (1993).

[5]NRS 34.160; *see also Round Hill Gen. Imp. Dist. v. Newman,* 97 Nev. 601, 604, 637 P.2d 534, 536 (1981).

such tribunal."[6] Writ relief is not proper to control the judicial discretion of the district court, "unless discretion is manifestly abused or is exercised arbitrarily or capriciously."[7]

The instant petition follows from petitioners' unsuccessful motion to dismiss the underlying case. We have previously held that writ relief is available to review a district court's denial of a motion to dismiss, but only on a limited basis. In *State ex rel. Department of Transportation v. Thompson,*[8] we determined that it was not in the best interest of Nevada's judicial system for this court to entertain writ petitions challenging district court denials of motions to dismiss or motions for summary judgment. Since that decision, we have determined that although we will generally decline to entertain such writ petitions, we may do so when: (1) no factual dispute exists and the district court is obligated to dismiss an action pursuant to clear authority under a statute or rule; or (2) an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition.[9] We have emphasized, however, that "very few writ petitions warrant extraordinary relief" and that "[t]he interests of judicial economy, which inspired the *Thompson* rule, will remain the primary standard by which this court exercises its discretion."[10]

Here, while we again reiterate the limited availability of writ relief to review district court orders denying motions to dismiss or for summary judgment, we conclude that the instant case is one of the very few instances that warrant extraordinary relief. The underlying case has been pending for nearly four years and involves important questions of law and serious, well-publicized allegations against the Attorney General's office. If petitioners' contention that Anzalone's claims are meritless is correct, the entire case must be dismissed. Petitioners have already been subjected to four years of litigation, and should not be subjected unnecessarily to four more years. We therefore conclude that judicial economy militates in favor of our intervention.

Anzalone counters, asserting laches. Anzalone explains that the petitioners waited over two years from the time he filed his complaint to file the underlying motion to dismiss. Writ relief is sub-

---

[6]NRS 34.320.

[7]*Newman,* 97 Nev. at 604, 637 P.2d at 536.

[8]99 Nev. 358, 361, 662 P.2d 1338, 1340 (1983).

[9]*Advanced Countertop Design v. Dist. Ct.,* 115 Nev. 268, 269, 984 P.2d 756, 758 (1999); *Smith v. District Court,* 113 Nev. 1343, 1345, 950 P.2d 280, 281 (1997).

[10]*Smith,* 113 Nev. at 1344-45, 950 P.2d at 281.

ject to laches.[11] To determine whether or not laches should preclude consideration of a writ petition, "a court must determine: (1) whether there was an inexcusable delay in seeking the petition, (2) whether an implied waiver arose from the petitioner's knowing acquiescence in existing conditions, and (3) whether there were circumstances causing prejudice to the respondent."[12]

Anzalone's contention that there was inexcusable delay lacks merit. Shortly after Anzalone filed his complaint, petitioners filed a motion to dismiss for failure to state a claim. The district court dismissed two causes of action and denied petitioners' remaining arguments for dismissal without prejudice, stating that petitioners could file a motion for summary judgment after the parties conducted discovery. Also, after the petitioners filed the underlying motion to dismiss, the district court continued the motion several times to conduct further discovery at the request of Anzalone's attorney. Furthermore, this writ petition was filed less than four months after the district court denied the underlying motion to dismiss, which does not present inexcusable delay.

As noted earlier, the motion should have been treated as a motion for summary judgment. Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to summary judgment as a matter of law.[13]

## Defamation

Anzalone alleges various defamation claims against Del Papa and J.T. Healy, an investigator with the Attorney General's office. To create liability for defamation there must be, among other things, a false and defamatory statement that was an unprivileged publication.[14] Anzalone's various defamation claims against Del Papa arise from a letter she wrote to the *Las Vegas Sun* on March 26, 1997. The letter was written in response to an article published in the *Las Vegas Sun* earlier that day that alleged that the Attorney General's office was conducting an unauthorized "intelligence investigation" of the GCB. This article also stated that, "Anzalone said he believes he was taken off the intelligence case in January 1996 and forced to resign a month later because he wouldn't help Thompson pursue the investigation, which did not lead to the filing of criminal charges against any other Control

[11]*Building & Constr. Trades v. Public Works,* 108 Nev. 605, 611, 836 P.2d 633, 637 (1992); *Buckholt v. District Court,* 94 Nev. 631, 633, 584 P.2d 672, 673 (1978).

[12]*Building & Constr. Trades,* 108 Nev. at 611, 836 P.2d at 637.

[13]*Posadas v. City of Reno,* 109 Nev. 448, 452, 851 P.2d 438, 441-42 (1993); *see also* NRCP 56(c).

[14]*Lubin v. Kunin,* 117 Nev. 107, 111, 17 P.3d 422, 425 (2001).

Board employees.'' Del Papa's letter first denied the allegations that the Attorney General's office was conducting an ''intelligence investigation,'' and as to Anzalone, the letter stated:

> The [March 26, 1997,] article places heavy reliance on an obviously disgruntled former employee of the Attorney General's office, who indeed was given the choice to resign or be fired. Mr. Anzalone has chosen to publicly discuss his reasons for leaving the Attorney's [sic] General's office, but has not been completely candid. In point of fact, I did lose confidence in Mr. Anzalone after it was reported to me that he had removed documents from a file and failed to turn over evidence after being requested to do so. In addition, Mr. Anzalone had been disciplined for misuse of state property. These are the reasons he was offered the option voluntarily to resign or be terminated. These may also be the reasons he has chosen to distort the facts.

Assuming for the purposes of our analysis that Del Papa's statements were defamatory, we conclude that they were protected under the common-law conditional privilege of reply, a privilege we now adopt. The common-law privilege of reply grants those who are attacked with defamatory statements a limited right to reply. In *Foretich v. Capital Cities/ABC, Inc.,*[15] the United States Court of Appeals for the Fourth Circuit explained, by example, how the privilege would work—''If I am attacked in a newspaper, I may write to that paper to rebut the charges, and I may at the same time retort upon my assailant, when such retort is a necessary part of my defense, or fairly arises out of the charges he has made against me.'' Applying this privilege is a question of law,[16] one we can resolve by simply comparing the two documents published. In the March 26, 1997, article, Anzalone attacked the Attorney General's office by stating that they were conducting an ''intelligence investigation'' and further that he was forced to resign because he refused to perform an illegal act. Del Papa's response rebutted these charges and explained the inaccuracies that were found within the March 26, 1997, article. Thus, we conclude that Del Papa's response falls within the conditional privilege of reply.

The privilege may be lost, however, if the reply: (1) includes substantial defamatory matter that is irrelevant or non-responsive

---

[15]37 F.3d 1541, 1559 (4th Cir. 1994) (quoting William Blake Odgers, *A Digest of the Law of Libel and Slander* \*228 (1st Am. ed. Bigelow 1881), *quoted in Chaffin v. Lynch,* 1 S.E. 803, 811 (Va. 1887)).

[16]*See Lubin,* 117 Nev. at 115, 17 P.3d at 428.

to the initial statement; (2) includes substantial defamatory material that is disproportionate to the initial statement; (3) is excessively publicized; or (4) is made with malice in the sense of actual spite or ill will.[17] In comparing Anzalone's statements within the article and Del Papa's reply letter, we conclude that it is clear that Del Papa's response did not exceed the privilege. Specifically, Del Papa limited her response to the allegations that the Attorney General's office was conducting an "intelligence investigation" of the GCB and that Anzalone was forced to resign because he would not help Thompson pursue this investigation. In addition, it was not excessive publication for Del Papa to also send the letter to the Governor, the GCB, and the Nevada Gaming Commission. It is clear that Del Papa's letter was made in response to the article and within the scope of the matters raised by Anzalone.

Notably, Anzalone alleges that Del Papa violated his right to privacy when Del Papa wrote the letter to the *Las Vegas Sun*. Anzalone argues that Del Papa divulged confidential information regarding the reasons why Anzalone was no longer employed with the Attorney General's office. "To maintain a cause of action for public disclosure of private facts one must prove that a public disclosure of private facts has occurred which would be offensive and objectionable to a reasonable person of ordinary sensibilities."[18] The *Restatement (Second) of Torts* provides that rules of conditional privilege that apply to a defamation claim are applicable in an invasion of privacy claim.[19] Assuming Anzalone has maintained a cause of action for invasion of privacy, we conclude for the same reasons stated above that Del Papa's response is protected under the conditional privilege of reply.

Anzalone next claims that Healy, during the execution of a search warrant unrelated to the Harris investigation, made statements to other individuals in law enforcement that reflected negatively on Anzalone's character, professional integrity, and honesty. Healy's deposition indicates that in response to an article about Anzalone's termination, Healy stated to other investigators, "if I had conducted an investigation that was crappy or half-assed, I would expect to be fired as well." As a general rule, only assertions of fact, not of opinion, can sustain a defamation

[17]*See Foretich*, 37 F.3d at 1559; *see also Restatement (Second) of Torts* §§ 599-605 (1977); Rodney A. Smolla, *Law of Defamation* §§ 8:61-8:65 (2d ed. 1999).

[18]*Montesano v. Donrey Media Group*, 99 Nev. 644, 649, 668 P.2d 1081, 1084 (1983).

[19]*See Restatement (Second) of Torts* § 652G (1977).

claim.[20] "The test for whether a statement constitutes fact or opinion is: 'whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact.' "[21] We conclude that Healy's statement is one of opinion.

### Tortious discharge

There is no dispute that Anzalone was an at-will employee of the State. It is well settled in Nevada that generally an at-will employee can be terminated "whenever and for whatever cause" without giving rise to liability on the part of the employer.[22] We have recognized, however, an exception to the general rule, where the termination violates the public policy of the state.[23]

To support a claim of tortious discharge, the evidence produced by the employee must be concrete and establish outrageous conduct that violates public policy.[24] Anzalone provides insufficient evidence to support his claim. In his deposition, Anzalone concedes that he was never asked outright to unlawfully obtain the bank and telephone records of GCB Chairman Bill Bible. However, after Anzalone had explained that he did not have probable cause to obtain a subpoena from the grand jury, it was his impression from Thompson's statement that there were other ways to obtain the records. This impression is insufficient to support Anzalone's claim of tortious discharge because we have held that, not only is the employee's unequivocal statement of outrageous behavior necessary, but that the employee's statement must be supported by independent evidence.[25] An employee's statements that are conjecture or speculation cannot support a claim of tor-

---

[20]K-Mart Corporation v. Washington, 109 Nev. 1180, 1191, 866 P.2d 274, 281 (1993).

[21]Lubin, 117 Nev. at 112, 17 P.3d at 426 (quoting Nev. Ind. Broadcasting v. Allen, 99 Nev. 404, 410, 664 P.2d 337, 342 (1983)).

[22]Yeager v. Harrah's Club, Inc., 111 Nev. 830, 834, 897 P.2d 1093, 1095 (1995).

[23]D'Angelo v. Gardner, 107 Nev. 704, 718, 819 P.2d 206, 216 (1991) ("The essence of a tortious discharge is the wrongful, usually retaliatory, interruption of employment by means which are deemed to be contrary to the public policy of this state.").

[24]Id.

[25]See Wayment v. Holmes, 112 Nev. 232, 236-37, 912 P.2d 816, 818-19 (1996). The only other evidence Anzalone produces in support of this allegation are two affidavits, which contain inadmissible hearsay statements, one from a friend that Anzalone told about being asked to get the records and one from another investigator who resigned, stating that he had the same impression as Anzalone, to obtain these same records by improper means.

tious discharge.[26] Therefore, Del Papa's affidavit and deposition testimony that Anzalone was requested to resign or be terminated because she lost confidence in Anzalone's abilities as a State employee and investigator for the Attorney General's office is unchallenged, and summary judgment is proper.

Likewise, Anzalone's claims for emotional distress damages also fail. We have recognized claims for intentional and negligent infliction of emotional distress in the context of wrongful employment termination.[27] In order to sustain a claim of emotional distress, however, the plaintiff needs to show that there was " 'extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress.' "[28] Anzalone's speculation regarding what he was asked to do does not provide a basis to establish outrageous conduct to award emotional distress damages any more than it does for the tort of wrongful discharge.

In a further attempt to establish outrageous conduct on the part of the petitioners, Anzalone claims that Del Papa threatened to "blacklist" him. As evidence to establish that he was blacklisted, Anzalone states that he has made great effort to find employment as an investigator in Nevada and has been unsuccessful. The only support he provides is a letter his attorney wrote to the Solicitor General Mark Gahn, alleging that the Attorney General's office mishandled a reference-check call. The letter asserts that the prospective employer was told that he needed to contact the solicitor general directly. Solicitor General Gahn informed the prospective employer that he could not tell him anything because of the pending litigation. Anzalone has produced no other evidence of action taken by petitioners to "blacklist" him.

It is insufficient to allege wrongdoing and cite only the resulting injury. In the face of a summary judgment motion, it is incumbent upon the party opposing it to produce some admissible evidence to show that the alleged tortfeasor acted negligently or intentionally, or failed to act when required to, and that the conduct or the failure to act is the proximate cause of the injuries complained of.[29] Anzalone has failed to show facts to establish

[26]*See Collins v. Union Fed. Savings & Loan,* 99 Nev. 284, 302, 662 P.2d 610, 621 (1983) ("[T]he opposing party 'is not entitled to build a case on the gossamer threads of whimsy, speculation and conjecture.' " (quoting *Hahn v. Sargent,* 523 F.2d 461, 467 (1st Cir. 1975))).

[27]*Shoen v. Amerco, Inc.,* 111 Nev. 735, 747, 896 P.2d 469, 476 (1995).

[28]*Id.* (quoting *Star v. Rabello,* 97 Nev. 124, 125, 625 P.2d 90, 91-92 (1981)).

[29]*See Posadas,* 109 Nev. at 452, 851 P.2d at 441-42.

probable cause to support his allegation of being "blacklisted." Anzalone's inability to find employment as an investigator could just as easily have been the result of Del Papa exercising her conditional right of reply and the resulting publicity. Anzalone has shown no evidence that the petitioners took any action to "blacklist" him, and therefore, fails to establish that they caused his unemployment.

## Section 1983

Anzalone alleges a claim under 42 U.S.C. § 1983 against Del Papa and Donald Haight. To establish a claim under § 1983, the plaintiff must prove that the conduct complained of: (1) was committed by a person acting under color of state law, and (2) deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.[30] We first note that the United States Supreme Court has held that officials acting in their official capacities are not persons under 42 U.S.C. § 1983, and therefore, may not be sued in state courts under the federal civil rights statutes.[31] As such, Anzalone has failed to state a claim under § 1983 against Del Papa and Haight in their official capacities. As noted earlier, the district court dismissed all the claims against Del Papa in her individual capacity.

Regarding the § 1983 claims against Haight in his individual capacity, the Ninth Circuit Court of Appeals has explained that 42 U.S.C. § 1983 "is designed to protect individuals from an abuse of state power by providing a cause of action against state and local officials who, acting within the scope of their duties, have deprived an individual of a cognizable federal right."[32] The threshold inquiry in a § 1983 claim is whether the plaintiff has identified a right cognizable under the statute. Section 1983 does not itself create substantive rights, "but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[33]

Anzalone alleges that Haight deprived him of his property interest in his job and his liberty interest in his reputation. The

[30]*See Lebbos v. Judges of Super. Ct., Santa Clara County,* 883 F.2d 810, 817 (9th Cir. 1989).

[31]*See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989); *see also Northern Nev. Ass'n Injured Workers v. SIIS,* 107 Nev. 108, 115, 807 P.2d 728, 732 (1991).

[32]*Devereaux v. Perez,* 218 F.3d 1045, 1051 (9th Cir. 2000).

[33]*Graham v. Connor,* 490 U.S. 386, 394 (1989) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)).

Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process. To establish a claim under § 1983 for deprivation of procedural due process, the claimant must establish "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process."[34] Property rights are defined by reference to state law.[35] Because Anzalone was an at-will employee of the State of Nevada, he had no property interest in his employment.[36] Therefore, this allegation fails to support a § 1983 claim.

Anzalone argues that the manner in which he was terminated impugned his good name and interfered with his ability to obtain employment within his chosen profession. "The liberty interest protected by the due process clause 'encompasses an individual's freedom to work and earn a living.' "[37] An employer who dismisses an employee for reasons which are published and are "sufficiently serious to 'stigmatize' or otherwise burden the [employee] so that he is not able to take advantage of other employment opportunities," entitles the employee to notice and a hearing to clear his name.[38] " 'Charges that carry the stigma of moral turpitude' such as dishonesty or immorality 'may implicate a liberty interest, but charges of incompetence or inability to get along with others do not.' "[39] Here, Del Papa stated that the reason she had Haight request Anzalone to resign or be terminated was because she lost confidence in Anzalone, which does not amount to charges of moral turpitude. Thus, we conclude that Anzalone cannot sustain his liberty allegation against Haight. Accordingly, for the reasons above, the district court should have granted summary judgment as to Anzalone's § 1983 claims.

*First Amendment/retaliation*

Anzalone presents a general allegation of First Amendment retaliation. He fails to cite any authority regarding this claim other than a United States Supreme Court case that states that Title VII extends to unfair employment practices used against a former

[34]*Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

[35]*Id.*

[36]*See Rea v. Matteucci*, 121 F.3d 483, 484-85 (9th Cir. 1997); *Brady v. Gebbie*, 859 F.2d 1543, 1548-49 (9th Cir. 1988).

[37]*Portman*, 995 F.2d at 907 (quoting *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1100 (9th Cir. 1981)).

[38]*Id.* (quoting *Bollow*, 650 F.2d at 1101).

[39]*Id.* (quoting *Wheaton v. Webb-Petett*, 931 F.2d 613, 617 (9th Cir. 1991)).

employee.[40] Based on this, we conclude that Anzalone's First Amendment retaliation claim is grounded in Title VII.

Anzalone first asserts that he exercised his right to free speech when he spoke to the reporter from the *Las Vegas Sun*. He then alleges that Del Papa retaliated against him on two instances for exercising this right: first, by threatening to "drag him through the mud" and following through on the threat; and second, by providing unfavorable information to the press through her reply letter.[41] He makes no allegation that he was discriminated against because of his race, color, religion, sex, or national origin, or retaliated against for opposing discriminatory practices.

Title VII prohibits employment decisions that have been motivated by an individual's race, color, religion, sex, or national origin.[42] In addition, Title VII prohibits employers from retaliating against an employee for opposing any practice that is an unlawful employment practice under Title VII or participating in any Title VII proceeding.[43] In essence, an employer is prohibited from retaliating against an employee because the employee challenges the employer's discriminatory practices.[44]

Here, we conclude that Anzalone's Title VII retaliation claim lacks merit. Anzalone's statements within the *Las Vegas Sun* article did not oppose any practice made unlawful under Title VII— discriminatory practices. Instead, Anzalone's statements within the article alleged that the Attorney General's office was conducting an unauthorized "intelligence investigation" of the GCB, and alleged that he was forced to resign because he refused to participate in that investigation. Accordingly, since no allegation or proof of discrimination has been made, we conclude that the dis-

---

[40]*Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997).

[41]We acknowledge that Anzalone asserts that Thompson began an investigation against him and his wife in connection with the Harris investigation. However, this alleged improper investigation occurred shortly after Anzalone resigned and before Anzalone exercised his free speech rights, and therefore, we conclude that this allegation cannot serve as the basis for Anzalone's retaliation claim.

[42]42 U.S.C. § 2000e-2(a) (1994).

[43]42 U.S.C. § 2000e-3(a) (1994) provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

[44]*See, e.g., Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1354 (9th Cir. 1984) (addressing the claim of a hospital employee that opposed the mistreatment of black patients); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (addressing an employment discrimination complaint).

trict court should have granted summary judgment as to Anzalone's retaliation claim.

## CONCLUSION

For the reasons set forth above, we grant petitioners' petition and direct the clerk of this court to issue a writ of mandamus directing the district court to grant summary judgment to petitioners on Anzalone's claims.[45]

SHEARING, J., dissenting:

I would deny the State's petition for a writ of mandamus or prohibition challenging the district court order denying the State's motion to dismiss. While I do not necessarily disagree with the law cited by the majority, I do not agree that the district court manifestly abused its discretion or exercised it arbitrarily or capriciously.[1] This court was correct in *State ex rel. Department of Transportation v. Thompson* when it determined that it is not in the best interests of Nevada's judicial system for this court to entertain writ petitions challenging district court denials of motions to dismiss or motions for summary judgment.[2]

---

[45]THE HONORABLE A. WILLIAM MAUPIN, Chief Justice, and THE HONORABLE NANCY A. BECKER, Justice, voluntarily recused themselves from participation in the decision of this matter.

[1]*See Round Hill Gen. Imp. Dist. v. Newman,* 97 Nev. 601, 604, 637 P.2d 534, 536 (1981) (interpreting NRS 34.160).

[2]99 Nev. 358, 361, 662 P.2d 1338, 1340 (1983).