# 132 Nev., Advance Opinion 53

## IN THE SUPREME COURT OF THE STATE OF NEVADA

HUMBOLDT GENERAL HOSPITAL;
AND SHARON MCINTYRE, M.D.,
Petitioners,
vs.
THE SIXTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
HUMBOLDT; AND THE HONORABLE
MICHAEL MONTERO, DISTRICT
JUDGE,
Respondents,
and
KELLI BARRETT,
Real Party in Interest.

No. 65562

FILED

JUL 28 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus challenging a district court order denying a motion to dismiss.

*Petition granted.*

Pollara Law Group and Dominique A. Pollara, Sacramento, California, for Petitioners.

David Allen & Associates and David Allen, Reno, for Real Party in Interest.

BEFORE THE COURT EN BANC.

## OPINION

By the Court: HARDESTY, J.:

NRS 41A.071 requires that a medical expert affidavit be filed with "medical malpractice" claims.[1] Real party in interest Kelli Barrett filed a complaint without an expert affidavit against petitioners Humboldt General Hospital and Sharon McIntyre, M.D., that included a battery claim based on an alleged lack of informed consent. In this case, we determine whether a battery claim against a medical provider based on an allegation of lack of informed consent is subject to the NRS 41A.071 medical expert affidavit requirement.

We conclude that allegations raising the scope of informed consent rather than the absence of consent to a medical procedure, even when pleaded as a battery action, constitute medical malpractice claims requiring a medical expert affidavit. Accordingly, because Barrett's complaint raises the scope of informed consent for the medical procedure, but does not allege a complete lack of consent, Humboldt and Dr. McIntyre's motion to dismiss Barrett's battery claim should have been granted. We thus grant the petition.

### FACTS AND PROCEDURAL HISTORY

Barrett had an intrauterine device (IUD) surgically implanted by Dr. McIntyre at Humboldt General Hospital. Approximately one year later, Barrett received a letter from Humboldt stating that the IUD was not approved by the Federal Drug Administration (FDA). Her IUD was

---

[1]The Legislature amended NRS 41A.071 during the 2015 legislative session. 2015 Nev. Stat., ch. 439, § 6, at 2527. Any discussion in this opinion related to this statute refers to the 2002 version of the statute in effect at the time real party in interest filed her complaint.

 

not FDA approved because it was shipped from Finland to a Canadian pharmacy rather than to a location in the United States. However, the implanted IUD was identical to FDA-approved IUDs and was manufactured at the same plant in Finland.

Barrett filed a complaint without a supporting medical expert affidavit alleging negligence and battery claims against Dr. McIntyre and Humboldt. In her negligence claim, Barrett alleged that Dr. McIntyre and Humboldt "had a duty to provide [her] with care, treatment, medications and medical devices consistent with state and federal law." And, in her battery claim, Barrett alleged that Dr. McIntyre and Humboldt "knew or reasonably should have known that . . . Barrett did not consent to the implantation in [her] body of said IUD which lacked FDA approval."

Dr. McIntyre and Humboldt moved to dismiss Barrett's complaint based on NRS 41A.071's requirement that an expert affidavit be filed with medical malpractice actions. The district court granted the motion to dismiss the negligence claim, finding that an expert affidavit was required, but denied the motion as to the battery claim, finding that "it does not appear beyond a doubt that" Barrett needed to include an affidavit with her battery claim. Dr. McIntyre and Humboldt then petitioned this court for a writ of mandamus directing the district court to dismiss Barrett's battery complaint under NRS 41A.071.

## DISCUSSION

Whether a claim under the informed consent doctrine must be pleaded as a tort action for negligence, rather than as one for battery, is an issue of first impression in Nevada. Because Barrett generally consented to the procedure performed, and the operative facts implicate the scope of informed consent, we conclude that Barrett's battery claim is

actually a medical malpractice claim requiring a medical expert affidavit under NRS 41A.071.

*Writ of mandamus*

"Normally, this court will not entertain a writ petition challenging the denial of a motion to dismiss," *Buckwalter v. Eighth Judicial Dist. Court*, 126 Nev. 200, 201, 234 P.3d 920, 921 (2010), but we may do so when "(1) no factual dispute exists and the district court is obligated to dismiss an action pursuant to clear authority under a statute or rule; or (2) an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition," *State v. Eighth Judicial Dist. Court*, 118 Nev. 140, 147, 42 P.3d 233, 238 (2002). Furthermore, this court may consider writ petitions that present matters of first impression that may be dispositive in the particular case. *Otak Nev., LLC v. Eighth Judicial Dist. Court*, 129 Nev., Adv. Op. 86, 312 P.3d 491, 496 (2013).

Here, there is no factual dispute regarding the absence of an expert medical affidavit filed with the complaint. Further, this case presents an important issue of law concerning the right to pursue a battery claim in a medical malpractice action that implicates the scope of informed consent. Because this issue is likely to recur, as evidenced by other writ petitions filed with this court seeking similar relief, and may be dispositive of the pending case, we exercise our discretion to entertain the merits of this writ petition.

*Expert affidavit requirement in medical malpractice claims*

The issues raised in this case present purely legal questions, primarily regarding statutory construction, so we conduct a de novo review. *Zohar v. Zbiegien*, 130 Nev., Adv. Op. 74, 334 P.3d 402, 405 (2014). "If an action for medical malpractice . . . is filed in the district

Supreme Court
OF
Nevada

(O) 1947A

4

court, the district court shall dismiss the action, without prejudice, if the action is filed without an affidavit." NRS 41A.071;[2] *see also Washoe Med. Ctr. v. Second Judicial Dist. Court*, 122 Nev. 1298, 1306, 148 P.3d 790, 795 (2006) ("We conclude that when a plaintiff has failed to meet NRS 41A.071's expert affidavit requirement, the complaint is void ab initio and must be dismissed, without prejudice, and no amendment to cure an NRS 41A.071 defect is allowed."). NRS 41A.009 (1985) defines "[m]edical malpractice" as "the failure of a physician [or] hospital . . . in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances."

Initially, we examine whether informed consent issues generally constitute medical malpractice, such that NRS 41A.071 requires a medical expert affidavit to be filed with a complaint. Next, we consider

---

[2]Many statutes in NRS Chapter 41A were amended during the 2015 legislative session. *See* 2015 Nev. Stat., ch. 439, §§ 1-13, at 2526-29. NRS 41A.071 now states, in pertinent part: "If an action for *professional negligence* is filed in the district court, the district court shall dismiss the action, without prejudice, if the action is filed without an affidavit." (Emphasis added.) NRS 41A.015 defines "[p]rofessional negligence" as "the failure of a provider of health care, in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances by similarly trained and experienced providers of health care." The amended language does not apply here because the amendments became effective after the district court entered its order in this matter, and our reference to the statutes in this section are to those in effect at the time of the cause of action. *See* 2015 Nev. Stat., ch. 439, § 13, at 2529. However, we note that the Legislature repealed NRS 41A.009's definition of "medical malpractice" and moved much of the operative language to the "professional negligence" definition stated above. *See* NRS 41A.009 (1985); NRS 41A.015 (2015); 2015 Nev. Stat., ch. 439, §§ 6, 12, at 2527, 2529.

whether a battery claim can be maintained when the claim arises out of a lack of consent.

*Issues of informed consent typically constitute medical malpractice claims*

NRS Chapter 41A governs medical malpractice actions in Nevada. Within that statutory scheme, NRS 41A.110 establishes when informed consent is conclusively given by a patient. As applicable here, a licensed physician has conclusively obtained a patient's consent for a medical procedure if a physician has explained in general terms, without specific details, the procedure to be conducted. NRS 41A.110.

Furthermore, this court has previously recognized that informed consent is generally a matter of medical malpractice. In *Bronneke v. Rutherford*, while considering what standard of care governs chiropractic informed consent cases, we concluded that "the professional standard, requiring expert testimony as to the customary disclosure practice, applies to chiropractors." 120 Nev. 230, 238, 89 P.3d 40, 46 (2004). Under the professional medical standard, "the physician must decide whether the information is material and should be disclosed to the patient." *Id.* at 233, 89 P.3d at 43. This standard imparts a duty upon the physician to "disclose information that a reasonable practitioner in the same field of practice would disclose . . . [, and] the professional standard must be determined by expert testimony regarding the custom and practice of the particular field of medical practice." *Smith v. Cotter*, 107 Nev. 267, 272, 810 P.2d 1204, 1207 (1991). As a result, we concluded that "the failure to obtain a patient's informed consent is a malpractice issue." 120 Nev. at 238, 89 P.3d at 446.

*Bronneke* conforms to the general rule in the United States: "a claim under the informed consent doctrine must be pled as a tort action for negligence, rather than as one for battery or assault." *Mole v. Jutton*, 846

Supreme Court
of
Nevada

(O) 1947A

6

A.2d 1035, 1042 (Md. 2004); *see also Cobbs v. Grant*, 502 P.2d 1, 8 (Cal. 1972) (adopting the majority position that "appears to be towards categorizing [the] failure to obtain informed consent as negligence"); *Dries v. Gregor*, 424 N.Y.S.2d 561, 564 (App. Div. 1980) ("We believe that medical treatment beyond the scope of a patient's consent should not be considered as an intentional tort or species of assault and battery . . . .").[3]

*Informed consent claims usually require a medical expert affidavit, but claims that a treatment or procedure completely lacked patient consent do not*

Barrett argues that insertion of the non-FDA approved IUD without her consent constitutes a true battery claim that does not require an expert medical affidavit. In *Bronneke*, we suggested that a battery claim may not exist when a question of informed consent is presented. 120 Nev. at 234-35, 89 P.3d at 43 (concluding that because the patient impliedly consented to the treatment, allowing "an eleventh-hour amendment to the complaint to add a battery claim" would be futile). However, we recognize that when consent to a treatment or procedure is completely lacking, the justifications supporting a medical expert affidavit are diminished.

---

[3]There is a minority position where "[t]he earliest cases treated this as a matter of vitiating the consent, so that there was liability for battery." *Cobbs v. Grant*, 502 P.2d 1, 8 (Cal. 1972) (internal quotations omitted). However, courts subsequently "began to . . . recognize[ ] that this was really a matter of the standard of professional conduct" and that "the action . . . is in reality one for negligence in failing to conform to the proper standard." *Id.* (third alteration in original). Some jurisdictions still maintain this distinction. *See, e.g., Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 748 (Pa. 2002) ("[T]his Court has made clear on repeated occasions over a period of several decades that a claim based upon a lack of informed consent involves a battery . . . .").

SUPREME COURT
OF
NEVADA

(O) 1947A

"A battery is an intentional and offensive touching of a person who has not consented to the touching," and "[i]t is well settled that a physician who performs a medical procedure without the patient's consent commits a battery irrespective of the skill or care used." *Conte v. Girard Orthopaedic Surgeons Med. Grp. Inc.*, 132 Cal. Rptr. 2d 855, 859 (Ct. App. 2003). Courts typically only allow consent issues to proceed as battery claims in "those circumstances when a doctor performs an operation to which the patient has not consented. When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present." *Cobbs*, 502 P.2d at 8; *see also Rice v. Brakel*, 310 P.3d 16, 19 (Ariz. Ct. App. 2013) (same); *Shuler v. Garrett*, 743 F.3d 170, 173 (6th Cir. 2014) (noting that in Tennessee "the threshold question in an informed consent case is whether the patient's lack of information negated her consent, the question in a medical battery case is much simpler: Did the patient consent at all?"); *Brzoska v. Olson*, 668 A.2d 1355, 1366 (Del. 1995) ("[T]he tort of battery is properly limited in the medical/dental setting to those circumstances in which a health care provider performs a procedure to which the patient has not consented."); *Mole v. Jutton*, 846 A.2d 1035, 1042 (Md. 2004) ("[A] claim under the informed consent doctrine must be pled as a tort action for negligence, rather than as one for battery or assault.").

The distinction between informed consent and battery claims is based on the concept that a doctor may show, in informed consent cases, "that the disclosure he omitted to make was not required within his medical community. However, expert opinion as to [the] standard [of care] is not required in a battery count, in which the patient must merely prove

failure to give informed consent and a mere touching absent consent." *Cobbs*, 502 P.2d at 8; *see also Bronneke*, 120 Nev. at 238, 89 P.3d at 45-46 (stating that expert opinions are necessary in informed consent and medical malpractice cases because juries, "as general laypersons, would not know the customary practice in the profession"). Thus, when consent is so lacking that a trier of fact may find that "the requisite element of deliberate intent [for battery] . . . is present," *id.*, the justification for an affidavit is diminished because an expert's opinion setting forth the standard of care and a good-faith basis for the action is unnecessary. *Zohar*, 130 Nev., Adv. Op. 74, 334 P.3d at 405 ("NRS 41A.071's affidavit requirement was implemented to lower costs, reduce frivolous lawsuits, and ensure that medical malpractice actions are filed in good faith based upon competent expert medical opinion." (internal quotations omitted)).

Accordingly, where a plaintiff claims not to have consented at all to the treatment or procedure performed by a physician or hospital, we conclude that such an allegation constitutes a battery claim and thus does not invoke NRS 41A.017A's medical expert affidavit requirement. However, consistent with conclusively obtaining a patient's consent under NRS 41A.110, where general consent is provided for a particular treatment or procedure, and a question arises regarding whether the scope of that consent was exceeded, an expert medical affidavit is necessary. *See Cobbs*, 502 P.2d at 8.

*Barrett's complaint*

Barrett's complaint does not allege that the IUD procedure completely lacked her consent. Instead, she alleges in her battery claim that she generally consented to the procedure but not to an IUD that

lacked FDA approval. *See Brzoska*, 668 A.2d at 1366 ("A patient's consent is not vitiated, however, when the patient is touched in exactly the way he or she consented."). As a result, her battery allegation presents a question that requires an expert's opinion regarding the standard of care and the scope of consent with respect to the use of an IUD device supplied by the same manufacturer but shipped in a way that lacked FDA approval. Accordingly, we conclude that Barrett's battery claim is actually a medical malpractice claim governed by Chapter 41A. Therefore, the district court erred by denying Humboldt's and Dr. McIntyre's motion to dismiss Barrett's battery claim because a medical expert affidavit was not filed with the claim. *See Washoe Med. Ctr.*, 122 Nev. at 1306, 148 P.3d at 795.

## CONCLUSION

For the reasons set forth above, we grant Humboldt's and Dr. McIntyre's petition for extraordinary relief as to Barrett's battery claim and direct the clerk of this court to issue a writ of mandamus instructing the district court to set aside its earlier order, and grant Humboldt's and Dr. McIntyre's motion to dismiss in its entirety.

_____, J.
Hardesty

We concur:

_____, C.J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A

10