DAVID WAYMENT, APPELLANT, v. DOROTHY NASH HOLMES, DONALD COPPA, WASHOE COUNTY DISTRICT ATTORNEY'S OFFICE AND COUNTY OF WASHOE, RESPONDENTS.

No. 26390

March 1, 1996 912 P.2d 816

*Roderic Carucci*, Reno; *David H.T. Wayment*, Reno, for Appellant.

*Richard A. Gammick*, District Attorney, and *Gregory R. Shannon*, Deputy District Attorney, Washoe County, for Respondents.

---

## OPINION

By the Court, RosE, J.:

Appellant David Wayment brought suit against respondents, former District Attorney Dorothy Nash Holmes, Assistant District Attorney Donald Coppa, Washoe County District Attorney's Office, and County of Washoe, for tortious discharge. The district court granted respondents' motion for summary judgment on the grounds that (1) Wayment presented no genuine issue of material fact that he was tortiously discharged, and (2) that all respondents were immune from suit.

We conclude that the district court's order granting respondents' motion for summary judgment was proper.

### FACTS

Wayment was employed by Washoe County as a deputy district attorney from August 1992 through February 18, 1994. On April 28, 1994, Wayment filed a lawsuit against respondents alleging that he was tortiously discharged.

Wayment was assigned to work on numerous motions to dismiss and petitions for writs of habeas corpus in a criminal prosecution commonly referred to as the Champion Chevrolet case. Coppa was Wayment's supervisor on this case and was also delegated the power to hire and fire employees. Wayment alleged that during the course of his work he discovered that the district attorney's indictment was invalid and that no legitimate defense could be raised to some of the defendants' motions and petitions. Wayment approached Coppa, who was prosecuting the case, told him of the deficiencies, and suggested that he either amend the indictment or dismiss the indictment and attempt to reindict the defendants. Wayment alleged by way of his own affidavit that Coppa refused to amend the indictment because to do so would be a concession that he had made a mistake. Wayment also alleged that Coppa stated that certain problems in the indictment were the result of his own incompetence and lack of understanding of the law in regard to one count.

Wayment argued repeatedly with Coppa over the alleged deficiencies in the indictment, constantly urging Coppa to amend or withdraw the indictment, of which Coppa did neither. Shortly after Wayment finished working on the motions and petitions, Coppa fired him, alleging that he did so because of Wayment's insubordination and unsatisfactory work performance. Wayment claims that he had an ethical duty under the Supreme Court Rules both to inform Coppa of the deficiencies and to try to get Coppa to cure those deficiencies, and that Coppa violated public policy by firing him for doing so.

The district court granted respondents' motion for summary judgment on the grounds that: (1) Wayment did not meet the standard to prove a public policy tortious discharge; and (2) respondents Coppa and Holmes were immune from suit pursuant to NRS 41.032(2), and the Washoe County District Attorney's office was not a suable entity.[1]

## DISCUSSION

Summary judgment is only appropriate when, after a review of the record viewed in the light most favorable to the non-moving party, there remain no issues of material fact. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985). "In determining whether summary judgment is proper, the nonmoving party is entitled to have the evidence and all reasonable inferences accepted as true." Wiltsie v. Baby Grand Corp., 105 Nev. 291, 292, 774 P.2d 432, 433 (1989).

This court's review of a summary judgment order is de novo. Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989). On appeal, this court is "required to determine whether the trial court erred in concluding that an absence of genuine issues of material fact justified its granting of summary judgment." Bird v. Casa Royale West, 97 Nev. 67, 68, 624 P.2d 17, 18 (1981).

### Tortious discharge in violation of public policy

It is undisputed that Wayment was an at-will employee who could properly be discharged without cause at the will of the employer. K Mart Corp. v. Ponsock, 103 Nev. 39, 42 n.1, 732

---

[1]The district court also granted summary judgment in favor of County of Washoe without stating a reason for doing so. The apparent reason was that the County of Washoe was a governmental entity entitled to governmental immunity pursuant to NRS 41.031 and 41.032.

P.2d 1364, 1366 n.1 (1987). However, Wayment contends that his termination was within the "tortious discharge" exception to the at-will employment doctrine. This exception states that "[a]n employer can dismiss an at-will employee with or without cause, so long as the dismissal does not offend a public policy of this state." Vancheri v. GNLV Corp., 105 Nev. 417, 421, 777 P.2d 366, 369 (1989). Terminating an employee for reasons which violate public policy gives rise to an action for tortious discharge. D'Angelo v. Gardner, 107 Nev. 704, 712, 819 P.2d 206, 212 (1991).

This court has repeatedly held that "public policy tortious discharge actions are severely limited to those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." Sands Regent v. Valgardson, 105 Nev. 436, 440, 777 P.2d 898, 900 (1989) (concluding that a legislative public policy against age discrimination was not sufficiently strong to warrant an exception to the at-will employment doctrine); see also Smith v. Cladianos, 104 Nev. 67, 69, 752 P.2d 233, 235 (1988).

Wayment argued that he had a mandatory ethical duty to refrain from bringing a frivolous action and from prosecuting a charge which he knew was not supported by probable cause. SCR 170 and 179(1). Wayment alleged that he was following these ethical duties when he repeatedly attempted to get Coppa to amend the indictment and that he was terminated for doing so. Therefore, Wayment concludes that his discharge was in violation of a strong and compelling public policy of having attorneys abide by the Supreme Court Rules.

Wayment's argument fails for two reasons. First, Wayment's contention that he was terminated for complying with his mandatory ethical duties is a mere allegation in his pleadings unsupported by any evidence which shows that there is a genuine issue for trial. NRCP 56(e). Wayment's affidavit, which is the sole piece of evidence relied on by Wayment, states only that he felt the indictment was deficient and that he argued with Coppa about amending or withdrawing the indictment; it does not state that he was terminated for exercising his duties pursuant to the Supreme Court Rules.

Wayment alleges that his version of the facts, i.e., that he was fired for exercising his duties under the Supreme Court Rules, must be taken as true, thereby curing any deficiencies in his

affidavit. This is an incorrect statement of the law. "Properly supported factual allegations and all reasonable inferences of the party opposing summary judgment must be accepted as true. However, conclusory statements along with general allegations do not create an issue of material fact." Michaels v. Sudeck, 107 Nev. 332, 334, 810 P.2d 1212, 1213 (1991) (citation omitted). Because Wayment's version of the facts is nothing more than conclusory allegations and general statements unsupported by evidence creating an issue of fact, it will not be accepted as true. Therefore, Coppa's testimony that he terminated Wayment for unsatisfactory work performance and insubordination is unchallenged, and summary judgment was proper.

Secondly, Wayment's argument fails because he did not state a prima facie case of tortious discharge. Wayment had a duty to refrain from bringing a frivolous action and from prosecuting a case which he knew was not supported by probable cause, and he discharged that duty the first time he informed Coppa of the alleged deficiencies in the indictment. The Supreme Court Rules do not require that an attorney constantly and repeatedly argue with his or her superior regarding potential deficiencies in a motion or other brief. The evidence in this case indicates that Wayment was not terminated simply because he brought the alleged deficiencies to Coppa's attention; rather, he was terminated because he constantly argued with Coppa about the proper way to proceed with the indictment in light of the alleged deficiencies.

This case does not present facts or issues similar to those where this court has found a tortious discharge in violation of public policy. *See* D'Angelo v. Gardner, 107 Nev. 704, 819 P.2d 206 (1991) (violations of public policy occurred where employers terminated employees for (1) refusing to violate the law, (2) refusing to work under conditions unreasonably dangerous to the employee, or (3) accepting jury duty); Hansen's v. Harrah's, 100 Nev. 60, 675 P.2d 394 (1984) (violation of public policy occurred when an employer terminated an employee who filed a workman's compensation claim). We conclude that terminating an at-will employee for insubordination is not contrary to public policy.

*Respondent's governmental immunity*

We conclude that the Washoe County District Attorney's office is not a suable entity because it is a department of Washoe

County, not a political subdivision. "In the absence of statutory authorization, a department of the municipal government may not, in the departmental name, sue or be sued." 64 C.J.S. *Municipal Corporations* § 2195 (1950) (footnotes omitted). The State of Nevada has not waived immunity on behalf of its departments of political subdivisions, and the Washoe County District Attorney's office has not been conferred the power to sue and be sued. NRS 41.031.

NRS 41.032 states that no action may be brought against the state, state agencies, political subdivisions, or any officer or employee of the state, its agencies, or its political subdivisions based upon the exercise or performance of a discretionary function or duty, whether or not the discretion involved is abused. This court has defined discretionary acts as "those which require the exercise of personal deliberation, decision and judgment." *Travelers Hotel v. City of Reno*, 103 Nev. 343, 345-46, 741 P.2d 1353, 1354 (1987).

Holmes, Coppa, and the County of Washoe are all immune by virtue of the fact that Coppa exercised a discretionary function when he terminated Wayment. Wayment was an at-will employee, and it is within the discretion of the district attorney to fire at-will employees. Furthermore, Holmes and Coppa were not acting in their individual capacities and are immune from liability because the termination was undertaken pursuant to their official duties. *See* Ramirez v. Harris, 105 Nev. 219, 220, 773 P.2d 343, 344 (1989).

Had Coppa terminated Wayment in bad faith, his actions would no longer be discretionary and subject to immunity. *See* Falline v. GNLV Corp., 107 Nev. 1004, 1009-10, 823 P.2d 888, 892 (1991). However, there is no indication that Coppa terminated Wayment in bad faith. Evidence showed that Wayment argued on a regular basis with Coppa about the prosecution of the Champion Chevrolet case and that Wayment was terminated for this repeated insubordination. Even if Coppa had abused his discretion when he terminated Wayment,[2] his behavior did not rise to the level of bad faith. *Id.* at 1009 n.3, 823 P.2d at 892 n.3.

## CONCLUSION

The district court's grant of summary judgment in favor of

---

[2]Even if Coppa abused his discretion when he terminated Wayment, he is still entitled to immunity pursuant to NRS 41.032(2).

respondents was proper because appellant created no issue of material fact as to his claim for tortious discharge. Furthermore, all respondents were immune from suit by virtue of the fact that the Washoe County District Attorney's office was not a suable entity and because Coppa exercised a discretionary function when he terminated Wayment. Therefore, we affirm the district court's order granting summary judgment in favor of respondents.

STEFFEN, C. J., and YOUNG and SHEARING, JJ., concur.

SPRINGER, J., dissenting:

I dissent because I do not believe that summary judgment was properly entered in this case.[1]

The trial court recites in its order granting summary judgment the following statement of Wayment's "version of the facts":

> [Wayment] was assigned to work on a number of motions to dismiss and petitions for writs of habeas corpus in the *Champion Chevrolet* case. [Wayment's] supervisor was Defendant Don Coppa. Wayment discovered that the Indictment was invalid and that no legitimate defense could be raised to a number of the contentions in the Motions and Petitions. [Wayment] urged Coppa to amend the Indictment or dismiss the same and reindict the defendants. Coppa refused because a Motion to Amend would constitute an admission that he had made an error. Wayment argues that he had a legal right to protest this misconduct and was fired for questioning Coppa's position.

Other alleged facts, appearing in Wayment's complaint or in Wayment's affidavit, are:

— Wayment claims in his complaint that "[d]efendant Holmes ratified the actions of Defendant Coppa in terminating the employment of Plaintiff."

— Wayment claims to have been fired "for questioning Coppa's position" and not for any other reason. This claim is supported by Wayment's affidavit that his immediate supervisor "repeatedly advised [him] that he was satisfied with [his] work, and further advised [him] that [the supervisor] had recommended [him] for the maximum raise possible."

— Wayment claims that Coppa admitted that he "did not understand" the law upon which the indictment was based

---

[1]Respondents moved to dismiss Wayment's complaint, but the trial court "elected to treat this application as a Motion for Summary Judgment in view of the fact that both counsel refer to documents other than the pleadings."

and that Coppa admitted "certain problems in the indictment were due to [his] 'incompetence.'" Wayment claims that Coppa told Wayment "that he did not want to try to amend the indictment because a motion to amend the indictment would concede that Coppa had made an error."

—The indictments drafted by Coppa about which Wayment was complaining were subsequently dismissed because they were defective as a matter of law.

—Wayment charged in his complaint that he was "terminated as a direct and proximate consequence of asserting his legal and ethical responsibilities by objecting to the defective pleadings in the Champion Chevrolet case, and the malicious, wrongful prosecution of the Champion defendants under a knowingly defective indictment." Wayment further charges that "he was wrongfully and maliciously terminated in retaliation for exercising a legal right and duty in the required performance with [sic] his duties as an officer of the Court and a member of the State Bar of Nevada in violation of the public policy of this state."

Wayment sues Holmes and Coppa on an intentional tort, the so-called "public policy" tort, a claimed tortious discharge alleged to have been committed by Holmes and Coppa (1) in malicious retaliation for Wayment's having exercised his legal duty to oppose a prosecution on an indictment known to be defective and (2) for Wayment's attempt to thwart what he calls "the malicious, wrongful prosecution of the Champion defendants under a knowingly defective indictment."

The trial court properly dismissed the "Washoe County District Attorney's Office" as a party because it "is not a suable entity." The trial court properly dismissed the County of Washoe because it is a governmental entity entitled to governmental immunity. The trial court incorrectly dismissed Holmes and Coppa on the ground of "immunity under NRS 41.032."

Immunity under the cited statute is given to public officers who are exercising their discretion in the performance of their public duties "'whether or not the discretion involved is abused.'" Falline v. GNLV Corp. 107 Nev. 1004, 1009 n.3, 823 P.2d 888, 892 n.3 (1991) (quoting NRS 41.032(2)). The case at hand involves an intentional tort alleged to have been committed by Holmes and Coppa. In the cases of malice, bad faith or other *intentional* misconduct a different rule relating to governmental immunity obtains. When an intentional or malicious "act or omission of bad faith occurs outside the circumference of authority," public officials may be held liable for their tortious misconduct. *Falline,* 107 Nev. at 1010 n.3, 823 P.2d at 892 n.3.

In Edgar v. Wagner, 101 Nev. 226, 699 P.2d 110 (1985), this court ruled on the question of the governmental immunity enjoyed by a district attorney. Where a complaint charged that a district attorney acted with malice and "in a deliberately structured effort to deprive appellant of due process, the allegations of the complaint state[d] a claim which, if accepted by the trier of fact, could entitle appellant to relief." *Id.* at 228, 699 P.2d at 112. *Edgar* held that the district court erred in concluding that malicious or deliberate wrongdoing was a prosecutorial function cloaked with absolute immunity. *Id.* In *Edgar,* this court noted that where a prosecutor is functioning "primarily as an administrator" then "protection from liability depends upon a showing that the prosecutor entertained a good faith, reasonable belief in actions taken in an administrative . . . capacity." Wayment has alleged that Holmes and Coppa, acting as they were in an administrative capacity when they discharged him, were not acting in good faith, but, rather, out of malice and other bad motives. Under the circumstances of the present case, which are similar to the *Edgar* case, Holmes and Coppa are not entitled to immunity as a matter of law.

Holmes and Coppa, naturally, claim that their termination of Wayment was merely a discretionary act, well within their "circumference of authority." Wayment, on the other hand, claims that Holmes and Coppa were acting "maliciously" and in "retaliation" for his having protested their irresponsible pursuit of an ill-founded prosecution which, for improper motives ("a wrongful, malicious prosecution of the Champion defendants"), was being advanced on a "knowingly defective indictment." These are, of course, two widely-disparate views of the nature of Wayment's firing. As Holmes and Coppa would have it, Wayment was simply being obstreperous, headstrong and insubordinate; so they fired him. In Wayment's view, he was merely trying to do everything he could do to prevent Holmes and Coppa from improperly and unlawfully putting Champion Chevrolet and its agents to the pain and expense of having to defend against a facially defective indictment. Wayment contends that because he tried to stop Holmes and Coppa from knowingly proceeding on a faulty indictment, they decided to fire him in retaliation for his opposition to their willful and malicious prosecution of the Champion Chevrolet people. As an appellate court, we cannot know which version might be correct; but, of course, Wayment should have his day in court if he has properly stated an action for retaliatory, tortious discharge.

The question that should have been decided in this appeal is whether a public employee states a claim for relief when the employee claims to have been maliciously terminated in retalia-

tion for performing his or her public duty. This question is not addressed by the majority. I would answer the question in the affirmative. If Wayment was terminated, as he claims, for complying with his mandatory, ethical duty, then this would certainly be violative of the public policy which encourages public officials and particularly public lawyers to perform their duties and to behave in a moral and ethical manner.

"A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous . . . ." SCR 170. A prosecutor is required to "[r]efrain from prosecuting a charge that the prosecutor knows is not supported by probable cause . . . ." SCR 179(1). Both Holmes and Coppa were under a duty not to pursue a frivolous or knowingly unfounded criminal indictment. If Wayment can prove, as he claims, that he advised Mr. Coppa that the indictment was faulty, that there was no probable cause to support the charges as they were then written, that Coppa and Holmes insisted upon proceeding on a knowingly defective indictment and that, then, they decided to terminate Wayment for his properly having objected to the prosecution of defendants on an indictment which Holmes and Coppa knew was defective, such conduct would, as stated, be contrary to the public policy of this state. Such allegations support an action for the intentional tortious discharge against Holmes and Coppa, and I would disallow either a motion to dismiss or a defendants' summary judgment under such circumstances.

