**Calvin Orin WRIGHT, Plaintiff,**

**v.**

**CITY OF LAS VEGAS, Nevada; Las Vegas Mayor's Office; and Oscar Goodman, Mayor Defendants.**

No. 4:05–CV–00143.

United States District Court, S.D. Iowa, Central Division.

Oct. 12, 2005.

Calvin O. Wright, Des Moines, IA, pro se.

Bruce E. Bergman, Des Moines City Attorney, Lawrence P. McLellan, Sullivan & Ward, PC, Des Moines, IA, Philip R. Byrnes, William P. Henry, Las Vegas City Attorneys Office, Las Vegas, NV, for Defendants.

## ORDER

GRITZNER, District Judge.

This matter comes before the Court on Defendants' Motions to Dismiss (Clerk's Nos. 5, 10, and 20). Plaintiff Calvin O. Wright appears pro se. Defendants City of Las Vegas, the Las Vegas Mayor's Office, and Mayor Oscar Goodman in his official capacity are represented by William P. Henry, Philip R. Byrnes, and Bruce E. Bergman. Lawrence P. McLellan represents Goodman in his personal capacity. No party has requested a hearing, and none is necessary to resolve the pending motions as they present questions of law on the basis of the pleadings and motions. The matter is fully submitted and is ready for disposition.

## FACTS

In January 2005, Calvin Wright decided to write a narrative about his participation in a Texas Hold 'em poker game played in October 1980 in a federal prison in Leavenworth, Kansas, while he was serving time there. In addition to Wright, fellow inmate Jimmy Chagra, then a client of Defendant Oscar Goodman, participated in the game. Wright claims Goodman, now the Mayor of Las Vegas, holds moneys totaling $500,000 to be paid to the game's winner.[1]

In a February 2, 2005, letter sent to Goodman, Wright demanded Goodman arrange a $75,000 loan for Wright. As collateral, Wright offered a 10 percent ownership interest in the narrative. If Goodman exercised an option to dismiss the loan as fully paid within thirty days of Wright's receipt of the money, Wright would allow Goodman to edit his name "where it may occur prior to marketing production" for the book. Wright also demanded Goodman arrange for Wright to be placed on payroll as a research and development consultant.

On February 15, 2005, Wright listened to a message on his answering machine from Chagra. Using a number with a Georgia area code, Wright returned Chagra's call. He learned Goodman had given Chagra Wright's number. Wright placed three subsequent calls to Chagra between February 18, 2005, and March 2, 2005. During their March 2, 2005, exchange, Wright contends he told Chagra he was filing for copyright protection on his book.[2] Wright claims Chagra told him he should reconsider writing his story, or Goodman might have Wright or his family hurt "or worse." Chagra reminded Wright that Goodman is a person with "a lot of power, a lot of clout, and that [Goodman] knew many well connected people." According to Wright, Chagra said he was speaking for Goodman. Wright then agreed to abandon writing his narrative.

Wright has also sent a number of letters to Goodman, which were unanswered. He also made a number of telephone calls to Goodman's secretary, which remain unreturned.

Wright commenced this section 1983[3] action by filing a Complaint on March 14,

---

1. In his "Letter of Claim and Demand for Payment", Wright claims he and Chagra were the final contestants in the game and "saw no point in playing off against each other since [they] had organized the game and were equal partners in the outcome." He nevertheless claims he is entitled to the entire stakes.

2. Records at the United States Copyright Office indicate Wright did not file for copyright protection on his book, but instead filed for copyright protection for his demand letter to Goodman. That office's records also show that no copyright has been filed on any other work authored by Wright.

3. Title 42 U.S.C. section 1983 provides, pertinently:

2005. He amended his Complaint on March 18, 2005.[4] As Defendants, he named Goodman in his official and personal capacities, the City of Las Vegas (the City), and the Las Vegas Mayor's Office (Mayor's Office). Wright claims Goodman violated his First Amendment rights by conspiring with Chagra to threaten him, forcing him to abandon writing his story.

Wright used a process server to effect service upon Defendants. An affidavit by the process server indicates he served a summons, the Complaint, and the Amended Complaint upon a Las Vegas city attorney on May 3, 2005. Although Wright mailed copies of his pleadings to Goodman, nothing indicates Goodman has been personally served with these documents.

The City, the Mayor's Office, and Goodman, acting in his official capacity, have filed a motion to dismiss, alleging Wright has failed to state a claim upon which relief can be granted. The City and Goodman, acting in his official capacity, have moved to dismiss for improper service of process. Finally, Goodman, acting in his personal capacity, has filed a motion to dismiss, alleging defects in personal jurisdiction, venue, and service of process. Wright resists all three motions.

## DISCUSSION

 The Court has a duty to liberally construe the pleadings of a pro se litigant. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Price v. Moody,* 677 F.2d 676, 677 (8th Cir.1982). A motion to dismiss is only proper where "it appears without doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Price,* 677 F.2d at 677. In the present posture, Wright enjoys a presumption that all factual allegations in his complaint are true. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *accord Price,* 677 F.2d at 677. Nevertheless, his "complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995) (citing *Davis v. Hall,* 992 F.2d 151, 152 (8th Cir.1993) (per curiam)).

## I. Claims Against the Mayor's Office and the City

### A. Service of Summons

The City claims dismissal of Wright's claims against it is proper under Federal Rule of Civil Procedure 12(b)(5), because Wright failed to effect proper service upon the City. Wright has attempted to serve the City in two ways: by mailing a copy of his Complaint and the summons to the Mayor's office, and by personally serving an attorney employed by the City.

 " '[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the per-

---

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983 (2000).

**4.** Initially, Wright claimed Goodman's conduct amounted to a violation of his Second Amendment right to free speech. He amended his complaint to allege a First Amendment violation.

son of the party served.'" *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) (quoting *Miss. Publ'g Corp. v. Murphree,* 326 U.S. 438, 444–45, 66 S.Ct. 242, 90 L.Ed. 185 (1946) (alteration by the *Omni Capital* Court)). Thus, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Id.*

Federal Rule of Civil Procedure 4(j)(2) sets forth the proper manner of service upon a local government:

> Service upon a state, municipal corporation, or other governmental organization subject to suit shall be effected by delivering a copy of the summons and of the complaint to its chief executive officer or by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant.

Fed.R.Civ.P. 4(j)(2). This rule identifies two ways Wright could successfully effect service. First, he could personally serve the chief executive officer of the City. *See id.* He has failed to do this. Second, he could serve the City in compliance with Nevada law. *See id.*

Nevada Rule of Civil Procedure 4(d)(5) sets forth the proper manner to effect service upon a local government in the State of Nevada. *See* Nev. R. Civ. P. 4(d)(5). That rule provides as follows:

> Service shall be made by delivering a copy of the summons attached to a copy of the complaint as follows: ... If against a county, city, or town, to the chairperson of the board of commissioners, president of the council or trustees, mayor of the city, or other head of the legislative department thereof.

Nev. R. Civ. P. 4(d)(5). Nevada law also allows service "upon the clerk or secretary of [a] political subdivision, corporation or agency" if the entity is capable of being sued. Nev.Rev.Stat. § 12.105 (2004). Wright has mailed a copy of the complaint and summons to the Mayor's office, but service by mail is not authorized under either Federal Rule of Civil Procedure 4 or Nevada law in an action against a municipality. *See* Fed.R.Civ.P. 4(d) (restricting service by mail to situations arising under rules 4(e), 4(f), and 4(h)); Nev.Rev.Stat. 12.105; Nev. R. Civ. P. 4(d)(5). Wright has served a City attorney, but such an individual is not among those upon which effective service may be made. Thus, Wright's service attempts with respect to his action against the City have been ineffective.

■ When ineffective service has occurred, a court "'has discretion to either dismiss the action, or quash service but retain the case.'" *Marshall v. Warwick,* 155 F.3d 1027, 1032 (8th Cir.1998) (quoting *Haley v. Simmons,* 529 F.2d 78, 78 (8th Cir.1976) (per curiam)). In light of the fact that Wright has failed to state a claim against the City, see *infra,* dismissal is proper here.

## B. Substantive Claims

■ In Nevada, political subdivisions may be sued; departments of political subdivisions may not. *See* Nev.Rev.Stat. § 41.031(1)-(2) (2004). Political subdivisions include,

> an organization that was officially designated as a community action agency pursuant to 42 U.S.C. § 2790 before that section was repealed and is included in the definition of an "eligible entity" pursuant to 42 U.S.C. § 9902, the Nevada Rural Housing Authority, an airport authority created by special act of the Legislature, a regional transportation commission and a fire protection district,

irrigation district, school district, governing body of a charter school, any other special district that performs a governmental function, even though it does not exercise general governmental powers, and the governing body of a university school for profoundly gifted pupils.

*Id.* § 41.0305, *amended by* 2005 Nev. Laws ch. 481, § 20. Of the types of governmental entities listed as political subdivisions, mayors' offices (or analogical entities) are not among them. *See id.* Citing *Wayment v. Holmes*, 112 Nev. 232, 912 P.2d 816 (1996), the Mayor's Office argues it is a department of a political subdivision and is thus not an entity capable of being sued. The *Wayment* court recognized that " '[i]n the absence of statutory authorization, a department of the municipal government may not, in the departmental name, sue or be sued.' " *Id.* (quoting 64 C.J.S. *Municipal Corporations* § 2915 (1950)). The court observed that a district attorney's office was a department of a county, and concluded that because Nevada had not waived sovereign immunity on behalf of departments of political subdivisions, the district attorney's office could not be sued. *Id.* Like the district attorney's office in *Wayment,* the Mayor's Office is not itself a political entity. It is merely the administrative arm of the City. The Mayor's Office is therefore not a "suable entity." *Id.* Thus, dismissal of Wright's claims against the Mayor's Office is proper.

■ The analysis now turns to Wright's claims against the City. Although section 1983 does not abrogate the sovereign immunity generally available to States or their agencies, *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 63, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), local governmental entities are not wholly immune from sec-

tion 1983 liability, *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 663, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A "proper analysis requires [the separation of] two different issues when a § 1983 claim is asserted against a municipality: (1) whether the plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Assuming, *arguendo,* that Wright suffered a constitutional violation or a violation of federal law occurred, Wright must allege that the City is responsible for that violation. *See City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (calling the "first inquiry" in section 1983 cases brought against municipalities "the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

■ In *Monell v. Department of Social Services,* the United States Supreme Court held that municipalities were no longer absolutely immune from section 1983 liability. *Monell,* 436 U.S. at 663, 98 S.Ct. 2018, *overruling in part Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Qualified immunity was removed from municipalities' quivers two years later. *See Owen v. City of Independence,* 445 U.S. 622, 650, 655–57, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). The Court has recognized, however, that a municipality is not automatically liable under section 1983 under a respondeat superior theory merely because it employs a tortfeasor. *Monell,* 436 U.S. at 663 n. 7, 98 S.Ct. 2018; *accord Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (collecting cases); *Pembaur v. Cincinnati,* 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Instead, a municipality is exposed to section 1983 liability

"only if a municipal custom or policy caused the deprivation of the right protected by the constitution or federal laws," *Angarita v. St. Louis County*, 981 F.2d 1537, 1546 (8th Cir.1992) (citing *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018); *accord Leatherman*, 507 U.S. at 166, 113 S.Ct. 1160, or if "a municipal policy or custom was the 'moving force [behind] the constitutional violation,'" *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir.1999) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018) (alteration by the *Mettler* court). Municipal policies and municipal customs are different creatures. *Id.*

■ To show a municipal policy, Wright must identify "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal officer who has final authority regarding such matters." *Id.; see also Angarita*, 981 F.2d at 1546 ("A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body.") (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)).

In *Hollins v. Powell*, the Eighth Circuit recognized that "when a mayor pursuant to the authority of his office violates a citizen's constitutional rights, a municipality is liable for damages under § 1983." *Hollins v. Powell*, 773 F.2d 191, 195 (8th Cir.1985). There, a city's mayor contested the legality of individuals' appointments to the city's land clearance authority and housing authority. *Id.* at 193. The mayor interrupted an authority meeting that was taking place in the City Hall and asked authority members not to convene until the legality of their appointments had been resolved. *Id.* When they refused, the mayor ordered them arrested and removed. *Id.* The members of the authority then sued the city and the mayor. *See id.* at 193–94. Following an adverse verdict, the city appealed, arguing that the mayor did not act on its behalf. *Id.* at 194. The Eighth Circuit disagreed, noting that because the mayor had the power to order the plaintiffs' removal from the City Hall under the city's governmental structure, the jury could fairly infer the mayor exercised his mayoral power in having the plaintiffs arrested and removed. *See id.* at 195–96. The court noted, though, that the mayor must have acted "pursuant to authority that [could] fairly be said to have been granted under the type of government that the city operates" in order to have the type of policy *Monell* requires. *Id.* at 195 (discussing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018); *see also Angarita*, 981 F.2d at 1547 (noting that actions taken by the superintendent of police in his official capacity, as the final policymaking authority in the city police department, were sufficient to impose liability upon municipal body).

■ Wright claims Goodman gave Wright's telephone number to Chagra and ordered him to threaten Wright. Wright further states that Chagra told him that Goodman "had a lot of power, a lot of clout, and that [Goodman] knew many well connected people." He does not claim Goodman ordered Chagra to make this threat "pursuant to the authority of his office" and does not argue Goodman was authorized to take this action under the city's governmental structure. *Hollins*, 773 F.2d at 195. In fact, the statements relating to Goodman's clout, power, and connections appear to be nothing more than commentary by Chagra on Goodman's personal importance and influence. Assuming, as the Court must, the truth of Wright's presently unsupported claim that a threat actually occurred in the manner Wright claims, Wright has not alleged Goodman ordered it in his official capacity as the City's mayor. He has thus failed to

allege the existence of a municipal policy leading to his harm.

■ To prove the existence of a municipal custom, Wright must allege the following:

"'(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, *i.e.*, [proof] that the custom was the moving force behind the constitutional violation.'"

*Mettler*, 165 F.3d at 1204 (quoting *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir.1998), in turn quoting *Jane Doe A ex rel. Jane Doe B v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir.1990) (alterations by the *Ware* court)). Section 1983 liability attaches under this theory "only where the municipality *itself* caused the constitutional violation at issue." *Kuha v. City of Minnetonka*, 365 F.3d 590, 604 (8th Cir. 2003) (emphasis supplied).

Wright has not alleged a "continuing, widespread, persistent pattern of unconstitutional misconduct" by the City's employees. He has also failed to allege that he provided notice to the City of a constitutional violation or a violation of federal law and the city tacitly authorized the conduct or displayed deliberate indifference to his claim. He has also failed to allege that his injury occurred as a result of any City custom, or that such a custom was the moving force behind his alleged harm. In fact, Wright has failed to allege that the City even knew about his claimed harm before the initiation of this lawsuit. Therefore, Wright has failed to allege any

action taken pursuant to a municipal custom.

Because Wright has failed to allege that his claimed constitutional violation resulted from a municipal policy or custom, he has failed to allege that the city was responsible for his claimed constitutional violation. By failing to allege some deliberate action attributable to the municipality, he has failed to state a claim against the City. Dismissal of his claims against the City is required.

## II. Official Capacity Claims Against Goodman

### A. Service of Summons

Goodman, acting in his official capacity, argues that dismissal of Wright's claims against him is proper under Federal Rule of Civil Procedure 12(b)(5), because Wright failed to effect proper service. As noted above, Wright has attempted to serve Goodman in two ways: by mailing a copy of the Complaint and summons to his office, and by serving a City attorney.

Service by mail is permitted under Federal Rule of Civil Procedure 4(d) in a narrow category of actions brought against individuals. *See* Fed.R.Civ.P. 4(d)(2). Here, though, the material contained in Wright's mailing to Goodman's office did not satisfy the requirements of that rule. For example, Goodman's mailing did not include "a prepaid means of compliance in writing," nor did it include a waiver. *See* Fed.R.Civ.P. 4(d)(2)(F), (G). Therefore, Rule 4(e) governs. That rule provides, in relevant part, that service can be effected upon an individual,

(1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an

action brought in the courts of general jurisdiction of the State; or

(2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process. Fed.R.Civ.P. 4(e)(1)-(2).[5]

As a technical matter, Goodman's argument that Wright's attempted service by mail was improper under Nevada law, and was therefore ineffective, is incomplete. Rule 4(e)(1) provides that service can occur "pursuant to the law of the state in which the district court is located, or in which service is effected." *Id.* R. 4(e)(1) (emphasis added). Thus, whether Nevada or Iowa allows service by mail is relevant. Service by mail is improper in Nevada and Iowa in cases like the one at bar. *See* Iowa R. Civ. P. 1.305; Nev. R. Civ. P. 4. Consequently, Wright failed to comply with Rule 4(e)(1).[6]

Alternatively, Wright could show he served Goodman in accordance with Rule 4(e)(2). This rule articulates a trio of methods to serve a summons. First, service is effective if the plaintiff personally delivers a copy of the summons and complaint to the defendant. Wright has not alleged that a copy of the summons and complaint was personally delivered to Goodman. Goodman claims he has not been personally served. Thus, Wright has not shown compliance with Rule 4(e)(2) in this manner.

Second, service is effective if a plaintiff delivers a copy of the summons and complaint to the defendant's dwelling house or place of abode and leaves it with a qualified individual. Wright does not allege, and the record does not show, this method of service occurred.

 Third, service is effective if the plaintiff delivers a "copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process." Fed.R.Civ.P. 4(e)(2). Wright claims that because he served his amended and original complaint upon a Las Vegas city attorney, service of process was proper. Unfortunately for Mr. Wright, no Nevada statute or rule authorizes service of process against a mayor by serving a city attorney. Nor has Wright alleged that Goodman appointed a city attorney to receive service of process on his behalf. *See Foster v. Lewis,* 78 Nev. 330, 372 P.2d 679, 679–81 (1962) (requiring an individual actually appoint an agent for the purpose of receiving service of process). "In the absence of actual specific appointment or authorization, and in the absence of a statute conferring authority, an agency to accept service of process will not be implied." *Id.* at 680. Thus, service upon a Las Vegas city attorney is legally insufficient to effect service upon Goodman.

---

**5.** Nevada Rule of Civil Procedure 4(d)(6) virtually mirrors Federal Rule of Civil Procedure 4(e)(2). Iowa Rule of Civil Procedure 1.305(1) largely tracks Federal Rule of Civil Procedure 4(e)(2).

**6.** Wright claims he "believed he was in compliance" with the Federal Rules of Civil Procedure by attempting to serve Goodman via mail. No matter how genuinely held, his state of mind is not germane when considering his compliance with the technical requirements of Rule 4. His contention that improper service was remedied by Goodman's response to his complaint and dispute of facts in the complaint and amended complaint are also irrelevant because Goodman challenged the sufficiency of service in a pre-answer motion, as permitted by Rule 12.

Wright did not comply with any of the abundant methods of service authorized by Rule 4(e). Consequently, proper service of process has not occurred with respect to Wright's official capacity claims against Goodman. As noted above, the Court may either dismiss Goodman's case or quash service. *See Marshall,* 155 F.3d at 1032. Because Wright has failed to set forth any official capacity claims against Goodman, see *infra* Part II.B, dismissal of his action is therefore required.

**B. Substantive Claims**

Alternatively, Goodman, acting in his official capacity, has moved to dismiss Wright's action under Federal Rule of Civil Procedure 12(b)(6), arguing that Wright's pleadings have failed to set forth a claim upon which relief can be granted.

■■■■ "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). "[A] defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 49–50, 108 S.Ct. 2250 (citations omitted). Our circuit has further explained that "[t]he injury complained of must have been caused by the exercise of some right or privilege created by the state, by a rule of conduct imposed by the state, or by a person for whom the state is responsible." *Parker v. Boyer,* 93 F.3d 445, 448 (8th Cir.1996) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).

Wright argues that because Goodman is an elected official who took an oath to obey and enforce federal laws and the laws of Nevada, any action taken by him is automatically taken under color of state law. This is incorrect. "'Acts of officers who undertake to perform their official duties ... whether they hew to the line of their authority or overstep it'" will subject a city to liability, *Dossett v. First State Bank,* 399 F.3d 940, 949 (8th Cir.2005) (quoting *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (plurality op.)); *Roe v. Humke,* 128 F.3d 1213, 1216 (8th Cir.1997) (quoting *Screws,* 325 U.S. at 111, 65 S.Ct. 1031), but "'acts of officers in the ambit of their personal pursuits are plainly excluded'" from action under section 1983, *Dossett,* 399 F.3d at 949 (quoting *Screws,* 325 U.S. at 111, 65 S.Ct. 1031). "Absent any actual or purported relationship between the officer's conduct and his duties as a[n official], the officer cannot be acting under color of state law." *Roe,* 128 F.3d at 1216; *see also Ottman v. City of Independence,* 341 F.3d 751, 761 (8th Cir.2003) ("A clear nexus must exist between the defendant's official conduct and the violation of the plaintiff's rights.").

Nowhere in Wright's pleadings does he set forth an act taken by Goodman in his capacity as the City's mayor. Even if Goodman accumulated power, clout, and connections as mayor of one of the nation's more notorious cities, Wright does not claim Goodman threatened Wright under pretense of law or while undertaking his

official duties as the City's Mayor. Consequently, he has failed to allege Goodman acted under color of law. As a result, the official capacity claims against Goodman must be dismissed.

### III. Personal Capacity Claims Against Goodman

Acting in his personal capacity, Goodman has moved to dismiss based on Federal Rules of Civil Procedure 12(b)(2) (lack of personal jurisdiction), 12(b)(3) (improper venue), and 12(b)(5) (insufficient service of process).

#### A. Service of Summons

Goodman, acting in his individual capacity, claims dismissal of Wright's personal capacity claims is proper because Wright failed to effect proper service upon Goodman. He claims Wright's decision to mail his pleadings does not amount to service because mailing pleadings is not a proper method of service in Nevada and is thus improper under Federal Rule of Civil Procedure 4(e). Because he did not waive service and was not personally served, Goodman concludes any attempted service by Wright was ineffective.

Even if Wright properly served Goodman in his official capacity, Goodman must still be served in his personal capacity. *See Kirkendall v. Univ. of Conn. Health Ctr.,* 205 F.3d 1323, 2000 WL 232071, at *1 (2d Cir.2000); *cf. Robinson v. Turner,* 15 F.3d 82, 85 (7th Cir.1994) (holding that in a *Bivens* action, "[s]ervice upon employee in his official capacity does not amount to service in his individual capacity") (citing *Micklus v. Carlson,* 632 F.2d 227, 240 (3d Cir.1980)); *Micklus,* 632 F.2d at 240 (rejecting the argument that once the defendant was served in his official capacity, he was properly before the court in both his individual and official capacities); *Scherer v. United States,* 241

F.Supp.2d 1270, 1282 (D.Kan.2003) (same). Knowledge of the lawsuit, alone, is insufficient. *See Omni Capital Int'l,* 484 U.S. at 104, 108 S.Ct. 404 (holding that "more than notice to a defendant" is required). For example, in *Kirkendall v. University of Connecticut Health Center,* the plaintiff served the defendants in compliance with applicable state rules relating to service of state agents. *Kirkendall,* 205 F.3d 1323, 2000 WL 232071, at *1. The same defendants were not served in their individual capacities. *Id.* The court ruled that the plaintiff's compliance with the statute relating to service of the defendants in their official capacities did not provide the district court with jurisdiction over the defendants in their individual capacities. *Id.* Consequently, dismissal of the individual capacity claims was proper. *Id.* (citing *Omni Capital Int'l,* 484 U.S. at 104, 108 S.Ct. 404). It follows, then, that for this Court to have jurisdiction over Goodman in his individual capacity, Wright must have served Goodman in accordance with the rules governing service upon individuals. As the analysis above illustrates, *see supra* Part II.A, he has not.

The Court may now either dismiss Wright's action or quash service. *See Marshall,* 155 F.3d at 1032. In light of Goodman's lack of contacts with Iowa, see *infra* Part III.B, dismissal is compelled.

#### B. Personal Jurisdiction

Even if Wright managed to comply with Rule 4, the Court must still have in personam jurisdiction over Goodman before Wright's action may proceed.

When personal jurisdiction has been challenged, the plaintiff bears the burden of proving jurisdiction is proper in the proposed forum. *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir.1996). "To survive a motion

to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendants can be subjected to jurisdiction within the state." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir.2004) (quotation marks and citation omitted). Until trial or an evidentiary hearing, only a *prima facie* showing of jurisdiction is required. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir.2003); *Digi–Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir.1996); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir.1991).

■ Goodman is not an Iowa resident, is not physically present in Iowa, and has not consented to suit here. Therefore, a two-prong inquiry guides the analysis. First, Iowa's long-arm statute must give the Court authority to exercise jurisdiction over the party challenging jurisdiction. *Dakota Indus.*, 946 F.2d at 1387–88. Second, if the statute authorizes jurisdiction, the Court's exercise of jurisdiction must comport with the constitutionally permissible limitations of due process. *Id.* at 1388. Iowa's long-arm statute extends jurisdiction over non-residents to the maximum extent permitted by the federal Constitution. *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005) (discussing Iowa R. Civ. P. 1.306).[7] The first prong thus folds into the second: whether the exercise of personal jurisdiction over Goodman comports with due process.

■ Due process requires "that in order to subject a defendant to jurisdiction in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)); *accord World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The "minimum contacts" requirement is met if the controversy is related to or arises out of a non-resident defendant's purposeful contacts with the forum ("specific jurisdiction"), or if the defendant has continuous and systematic contacts with the forum ("general jurisdiction"). *See Burger King*, 471 U.S. at 472–76, 105 S.Ct. 2174 & n. 15; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Dever*, 380 F.3d at 1073. A defendant must have "purposefully availe[d him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *accord Burger King*, 471 U.S. at 472, 105 S.Ct. 2174. More than "random, fortuitous, or attenuated" contacts are required, *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (quotation marks omitted); the contacts and connection with the state must be sufficient to cause a defendant to "reasonably anticipate being haled into court" in the

---

7. Iowa Rule of Civil Procedure 1.306 provides, in pertinent part, "Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact [sic] with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States." Iowa R. Civ. P. 1.306.

proposed forum. *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559, 62 L.Ed.2d 490.[8]

■ To guide the due process analysis, the Eighth Circuit has fashioned a five-factor test, with the first three factors considered in the aggregate and carrying the most weight. *See Epps*, 327 F.3d at 648; *Burlington Indus.*, 97 F.3d at 1102; *Digi–Tel Holdings*, 89 F.3d at 522–23. The five factors are: (1) the nature and quality of the contacts with the forum, (2) the quantity of the contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Epps*, 327 F.3d at 648; *Burlington Indus.*, 97 F.3d at 1103; *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir.1983). Our circuit uses the third factor to distinguish cases invoking specific jurisdiction from those invoking general jurisdiction. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir.1994) (discussing *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868 nn. 8–9).[9] With these standards in mind, the analysis turns to Goodman's contacts with Iowa in light of the factors prescribed by the Eighth Circuit.

■ Wright claims personal jurisdiction exists because Goodman "initiated and implemented" threats against Wright and his family through an intermediary.[10] The only potential contact between Goodman and Iowa gleaned from Wright's pleadings is the telephone call Goodman allegedly placed to Chagra, wherein he instructed Chagra to threaten Wright. Wright does not allege Goodman ever contacted him directly, and he admits Goodman never responded to his letters and telephone calls. Goodman contends that he never called Chagra, but even if he did, that contact is insufficient to generate minimum contacts with Iowa. Goodman further emphasizes that he has neither visited nor resided in Iowa, has no agents or employees in Iowa, and does not and never has conducted business in Iowa.

■ A single act can be sufficient to establish minimum contacts, provided the defendant purposefully directs it at residents of the forum and the injury complained of arises out of or relates to that activity. *See, e.g., McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (implying that a single contract, entered into via mail with a forum resident, could meet the minimum contacts test in a claim on the contract); *Sanders v. United States*, 760 F.2d 869, 871 (8th Cir.1985) (concluding that under Missouri's long-arm statute, which also

8. Wright's contention that cases such as *International Shoe* and *World–Wide Volkswagen* are inapplicable because they did not involve a deprivation of civil rights is misplaced. The relevance of these cases here is not related to their merits, but their teachings on jurisdictional matters.

9. The company Bell Paper Box, Inc., has been involved in two unrelated personal jurisdiction cases resolved by the Eighth Circuit: *Bell Paper Box, Inc. v. Trans Western Polymers Inc.*, 53 F.3d 920 (8th Cir.1995), and *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816 (8th Cir.1994). For clarity, these cases shall be referred to as *Trans Western Polymers* and

*U.S. Kids*, respectively, following a full citation of each case.

10. Wright also claims the Court has jurisdiction over his claims against Goodman because Wright resides in Iowa. Because the primary focus is on the relationship among the defendant, the forum, and the litigation, *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), Wright's residence in Iowa takes a less important role in the jurisdictional calculus than Goodman's contacts with Iowa. *See, e.g., Trans W. Polymers, Inc.*, 53 F.3d at 922 (analyzing contacts between the *defendant* and the proposed forum).

permits jurisdiction to the fullest constitutional limit, "the minimum contacts requirement may be met by a single act if the cause of action arises from that act"); *Fulton v. Chicago, Rock Island & P. R.R. Co.*, 481 F.2d 326, 334–35 (8th Cir.1973) ("reject[ing][the] contention [that] exercise of jurisdiction upon a 'single act' is constitutionally impermissible").

In one case, the Iowa Supreme Court recognized that a single telephone call made by a defendant's agent can provide a basis for personal jurisdiction over a non-resident defendant. *See Norton v. Local Loan*, 251 N.W.2d 520 (Iowa 1977). In *Norton v. Local Loan*, a phone call was placed by the defendant creditor's agent in Nebraska to the Iowa plaintiffs. *Id.* at 520. The Iowa Supreme Court held that this one call provided sufficient minimum contacts to allow an Iowa court to exercise jurisdiction over the defendant for a claim arising directly from the telephone call. *Id.* at 522. Although seemingly applicable at first blush, this case is inapposite.

The Norton Court relied heavily on *Edmundson v. Miley Trailer Co.*, where the Iowa Supreme Court recognized "a national tendency which generally has required less and less contact for the constitutional minimum." *See id.* at 521–22; *Edmundson v. Miley Trailer Co.*, 211 N.W.2d 269, 272 (Iowa 1973). In *Edmundson*, the Court held that it was "reasonable" for the non-resident manufacturer and retailer of a trailer and hitch to be subject to a lawsuit anywhere the trailer and hitch traveled. *Edmundson*, 211 N.W.2d at 272. *Edmundson* has been overruled. *See Smalley v. Dewberry*, 379 N.W.2d 922, 924–25 (Iowa 1986) (recognizing that *World–Wide Volkswagen* "is a rejection of *Edmundson*," so "*Edmundson* ... must be, and is, overruled"). Thus, although

*Norton* has not been directly overruled, the major pillar of its reasoning has been.

*Norton* aside, the balance of authority supports the view that telephone calls and mailings directed at a forum's residents are, alone, insufficient to amount to minimum contacts. *E.g., First Nat'l Bank v. First Nat'l Bank*, 258 F.3d 727, 729 (8th Cir.2001) (noting that "telephone calls add nothing to the quality of the[ ] contacts"); *Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1390 (8th Cir.1997) ("Phone calls into a state are also a relevant contact, although they do not in themselves establish jurisdiction."); *Trans W. Polymers*, 53 F.3d at 923 ("The use of interstate facilities, such as telephones or mail, is a secondary or ancillary factor and cannot alone provide the 'minimum contacts' required by due process.") (quotation marks and citation omitted); *Pro Edge, L.P. v. Gue*, 374 F.Supp.2d 711, 733 (N.D.Iowa 2005) (stating that the "use of interstate facilities such as mail and telephones," standing alone, is insufficient to establish minimum contacts) (citing *Trans W. Polymers*, 53 F.3d at 923); *Barrett v. Catacombs Press*, 44 F.Supp.2d 717, 729 (E.D.Pa.1999) ("While telephone and mail contacts with residents of the forum state can be enough to subject a defendant to jurisdiction, such cases include other indications of a substantial connection."); *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 966 F.Supp. 833, 837 (D.Minn.1997) ("Correspondence such as letters, facsimiles, and telephone conversations alone do not establish personal jurisdiction." (citing *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 312–13 (8th Cir.1982)). Therefore, insofar as Wright claims minimum contacts exist because of Goodman's call to Chagra and Chagra's call into Iowa, his argument is unsupported by the law.[11]

---

**11.** With the mobility of cellular phones, Chagra, equipped with a number brandishing a

Moreover, Wright's argument is essentially that Chagra acted as Goodman's agent when he threatened Wright. *See* Statement of Facts, at 2 ("When ask[ed,] Chagra stated that he was speaking for [Goodman]."). "Although a court may exercise personal jurisdiction over a defendant through the acts of his agent, a party who relies upon the authority of an agent has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority." *Romak USA v. Rich*, 384 F.3d 979, 985 (8th Cir.2004) (quotation marks and citation omitted); *see Ross v. First Sav. Bank*, 675 N.W.2d 812, 819 (Iowa 2004) ("[A]ctivities of an agent within a state may support personal jurisdiction of a nonresident principal."). Such a "relationship exists when there is (1) a manifestation of consent by one person ... that another ... shall act on the former's behalf and subject to the former's control and (2) the consent of the latter to so act." *Gardin v. Long Beach Mortgage Co.*, 661 N.W.2d 193, 199 (Iowa 2003); *accord Benson v. Webster*, 593 N.W.2d 126, 130 (Iowa 1999); *see also Locate.Plus.Com v. Iowa Dep't of Transp.*, 650 N.W.2d 609, 619 (Iowa 2002) ("An agency relationship results only when there is an understanding between the parties that creates a fiduciary relationship under which the fiduciary is subject to the directions of the principal and acts on account of the principal."). Key in "determining whether an agency relationship exists is the principal's right of control." *Gardin*, 661 N.W.2d at 199; *Benson*, 593 N.W.2d at 130.

Wright's sole allegations relate to statements made by Chagra, where Chagra says he was "speaking on behalf of [Goodman]." His pleadings contain no manifestations by Goodman that Chagra could act on his behalf. Additionally, Wright points to no conduct or acts of Goodman that ratified Chagra's conduct. *See, e.g., Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1433 (8th Cir. 1995) (holding irrelevant the argument that a director's conduct amounting to minimum contacts was unauthorized where the director's employer ratified the director's conduct). Thus, Wright has not pointed to minimally sufficient facts supporting his contention that Chagra acted as Goodman's agent when he threatened Wright.

Given the presence of only telephonic contacts between Goodman and Iowa (and then through a purported agent), and the lack of evidence showing Chagra acted as Goodman's agent by making the alleged threat against Wright, the first three factors in the jurisdictional analysis weigh against the existence of personal jurisdiction over Goodman in Iowa.

Wright has not submitted any evidence regarding the convenience of the parties. Since he carries the burden of proof, this factor weighs against him. *Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997) (holding that plaintiff's "failure to offer any evidence with respect to the convenience of the parties means that this factor militates against him"). Finally, even though Iowa has an interest in resolving the disputes of its citizens, *Roquette Am., Inc. v. Gerber*, 651 N.W.2d 896, 903 (Iowa Ct.App.2002); *see also Burger King*, 471 U.S. at 473–74, 105 S.Ct. 2174 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by

Georgia area code, could have called from virtually anywhere. Wright (who is hampered with the burden of proof) has not alleged (or proven) Chagra has ever physically been in Iowa. As a result, the one call Chagra made into Iowa forms the sole basis for Wright's jurisdictional argument.

out-of-state actors." (quoting *McGee*, 355 U.S. at 223, 78 S.Ct. 199)), the fact that this factor stands alone in support of the exercise of jurisdiction is telling of the overall absence of a nexus between Goodman and Iowa.

Viewing the circumstances of this case as a whole, Wright has not made a *prima facie* case of personal jurisdiction over Goodman. Goodman's motion to dismiss must be granted.

### C. Venue

Because the Court does not have personal jurisdiction over Goodman, his contention that venue is not proper in the Southern District of Iowa is moot. *See Christenson Transp., Inc. v. Samsung Int'l, Inc.* 2005 WL 1356151, at *2 (W.D.Mo. June 7, 2005) (dismissing as moot contentions of improper venue after determining no personal jurisdiction existed over the defendant); *accord Washington Square Sec., Inc. v. Walden,* 2004 WL 45505, at *9 (D.Minn. Jan.6, 2004); *Aluminum Housewares Co. v. Chip Clip Corp.,* 609 F.Supp. 358, 362 (E.D.Mo.1984).

### IV. Conclusion

For the above reasons, the Motions to Dismiss (Clerk's Nos. 10 and 20) filed by the City, the Mayor's Office, and Goodman in his official capacity must be **granted**. The Motion to Dismiss filed by Goodman in his personal capacity (Clerk's No. 5) also must be **granted**. Wright's action must therefore be **dismissed** in its entirety.

**IT IS SO ORDERED.**